**Otto BENNETT**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

March 29, 1972.

Rendle A. Jones, Camden, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

This is an appeal by Otto Bennett from a decree of a Single Justice denying on its merits petitioner's claim for relief under our post-conviction habeas corpus statute, 14 M.R.S.A., §§ 5502–5508.

Convicted on October 20, 1960 of the offense of having carnally known a female child of eleven years in contravention of R.S., c. 130, § 10 (now 17 M.R.S.A., § 3151), Bennett was sentenced to the Maine State Prison for a term of not less than five (5) nor more than ten (10) years. He carried exceptions to this Court which were overruled in State of Maine v. Bennett, 1962, 158 Me. 109, 179 A.2d 812. Committed to the Prison for the service of his sentence on April 2, 1962, he was paroled on March 28, 1966. In less than one month, however, he was returned to the institution for violation of parole on the ground that he refused to seek employment to support his family. On April 28, 1966 the State Probation and Parole Board,[1] after hearing under 34 M.R.S.A., § 1675, found that Bennett had violated his parole and it was revoked. Remanded to the Prison and while incarcerated therein to serve the unexpired portion of his original sentence, the petitioner on September 27, 1966 initiated the instant post-conviction habeas corpus proceeding in which he complains that the revocation of his parole was unlawful and in violation of his constitutional rights. After hearing, the Single Justice on February 10, 1970 dismissed the petition for habeas corpus on its merits. He rejected the respondents' motion that the petition be dismissed for mootness,

---

1. By Public Laws, 1971, c. 172, § 3 the name of the Board was changed to the State Parole Board.

even in the light of the evidentiary fact that Bennett had been discharged from his sentence on December 10, 1969.

The threshold issue presented in this appeal is two-fold, 1) whether the Court below lost jurisdiction with respect to the petitioner's application by reason of the expiration of his sentence before adjudication of the question at issue, and, if so, whether or not this Court similarly has no jurisdiction of the appeal, and 2) even if the Court below had jurisdiction, did the expiration of the sentence prior to final decision render the action moot and deprive the Court of any justiciable issue.

Our statute governing the post-conviction habeas corpus remedy requires as a prerequisite jurisdictional factor that the petitioner, at the time he initiates his petition, qualify as a

"person convicted of a crime and incarcerated thereunder including any person committed as a juvenile offender, or released on probation, or paroled from a sentence thereof, or fined." 14 M.R.S. A., § 5502.

We stated in Thoresen v. State, 1968, 239 A.2d 654, that "[c]learly the statute contemplates either a presently existing actual or physical restraint or a technical hold or restraint which under appropriate circumstances (as for example by violation of probation or parole or non-payment of fine) could be converted to a physical restraint." We re-affirmed that ruling in Staples v. State, 1971, Me., 274 A.2d 715. The underlying legislative policy was said to be that "a contrary rule might well overwhelm the courts with stale and frivolous claims the very antiquity of which would defy proper determination." Staples v. State, supra.

Bennett, at the time he brought his petition for the writ of habeas corpus, satisfied the statutory prerequisite of actual physical restraint under his original sentence, questioning the legality of his then detention on the ground that his freedom on parole had been illegally terminated by reason of unlawful and unconstitutional revocation-of-parole proceedings.

In Mottram, 1967, Me., 232 A.2d 809, this Court held

"that our post-conviction habeas corpus is the *proper remedy to test the legality of a parolee's imprisonment* on the alleged claim that the Board acted illegally in revoking his parole without the hearing required by law." (Emphasis added.)

The respondents contend, however, that the State has a legitimate interest in bringing litigation to an end. They claim that, where the prisoner has completely satisfied the terms of his sentence and has been discharged therefrom, the issue originally raised respecting the legality of the former detention becomes moot and the post-conviction habeas corpus remedy to test the lawfulness of the previous incarceration is no longer available to the discharged prisoner, the court having lost jurisdiction of the subject-matter. They cite Longway v. State, 1965, 161 Me. 430, 213 A.2d 519 as sustaining their position.

In Carafas v. LaVallee, 1968, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554, the Supreme Court of the United States ruled that the "in custody" requirements of the federal habeas corpus statute were satisfied if the petitioner for the writ was in custody at the time of the filing of the application for habeas corpus with the federal court. The Court viewed the issue, not as one of "mootness in the technical or constitutional sense," but one of statutory judicial power to grant relief. It concluded from the statutory provision—"[t]he court shall . . . dispose of the matter as law and justice require"—that under the federal statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the state prisoner-petitioner prior to completion of the proceedings on his application to the federal courts under the federal habeas corpus statute.

Our own post-conviction habeas corpus statute provides for broader relief than the mere release of the prisoner. Indeed, as we said in *Mottram*, supra:

"Under 14 M.R.S.A. § 5505, the sitting justice in post-conviction habeas corpus is given broad powers necessary to meet a variey of circumstances in that he can make such orders as he deems appropriate to his findings in the case and the statute says, 'including, but not limited to, the release of the petitioner, corrections in error of law appearing on the face of the record, resentencing, or remanding for resentencing if an erroneous or illegal sentence be found to have been entered, setting aside the plea, conviction and sentence.' This indicates a legislative intent to include relief beyond the sphere of remedial action provided by the previous habeas corpus, writ of error and common law coram nobis proceedings, which our statutory post-conviction habeas corpus was designed to supplant."

█ Mindful of the liberal construction to be given to our Act as indicated by this Court in *Thoresen*, supra, and that

—"it must be given such reasonable flexibility within the spirit of the statutory enactment that it may be an effective procedural vehicle for collaterally reaching all fundamental defects in the administration of criminal justice", Green v. State, 1968, Me., 245 A.2d 147,—

we rule as in *Carafas*, supra, that once jurisdiction has attached in our post-conviction habeas corpus court by reason of the existence, at the time of the filing of the petition, of the necessary actual or technical physical restraint required by the statute, the unconditional release from custody during the course of the proceedings and prior to final adjudication does *not* deprive the courts of their jurisdiction to further entertain the issue presented.

In *Longway*, supra, this Court dismissed the appeal both on the ground of mootness and jurisdictional non-availability of habeas corpus where the petitioner was no longer restrained under the sentence which he had completely served. Longway was convicted in January, 1962 of the felonious larceny of a motor vehicle for which he was sentenced to the Maine State Prison for a term of not less than one year nor more than two years. Convicted of the crime of escape, Longway received the additional sentence of not less than two and one half and not more than six years; the escape sentence by statutory fiat could not be served simultaneously with the larceny sentence. In November, 1964, [so the record of the case indicates] a petition for the writ of habeas corpus was brought to test the legality of the larceny conviction, the sentence of which Longway had commenced serving on July 19, 1963. In December, 1964, the Superior Court discharged the writ. While the case was on appeal to this Court, on February 12, 1965, Longway was discharged from the larceny sentence which he then had fully satisfied and thereupon entered upon the service of the escape sentence. Such was the posture of that case when on October 19, 1965 this Court dismissed the appeal. Both *Longway*, supra, and *Carafas*, supra, dealt with felony convictions which had been fully served by the time the appellate courts had reached the issue on appeal. The *Carafas* Court, unlike the *Longway* Court, held that the habeas corpus petitioner was entitled to consideration of his application for relief on its merits.

The Court's rationale in *Carafas* was that, because of the disabilities or burdens which *may* flow from the conviction, the petitioner has a *substantial* stake in the judgment of conviction which survives the satisfaction of the sentence imposed, in other words, that collateral consequences exist which void the mootness concept. Fiswick v. United States, 1946, 329 U.S. 211, 222, 67 S.Ct. 224, 91 L.Ed. 196. The Court added that there was no need in the statute, the Constitution, or sound jurispru-

dence for denying to the petitioner his ultimate day in court.

Furthermore, in Pollard v. United States, 1957, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393, the Supreme Court abandoned all inquiry into the actual existence of specific collateral consequences resulting from convictions of crime and in effect presumed that they existed. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917.

The conviction in *Longway,* as in *Carafas,* supra, and *Sibron,* supra, involved a felony and subjected Longway to impeachment of his credibility by reason thereof, should he choose at any future criminal trial to put his character for veracity in issue, thus potentially for all practical purposes chilling or absolutely barring his constitutional privilege to testify in his own defense.[2] Furthermore, the felony conviction exposed Longway, upon a subsequent conviction of a crime punishable by imprisonment in the State Prison, to the increased punishment of any term of years.[3]

The *Longway* decision relied heavily upon McNally v. Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238. The United States Supreme Court, in Peyton v. Rowe, 1968, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed. 2d 426, ruled that a prisoner could attack the first of two consecutive sentences in a federal habeas corpus proceeding even though he would still be confined under the second sentence if he succeeded, citing Walker v. Wainwright, 1968, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215. It further added that, "to the extent that *McNally* re-lied on the notion that immediate physical release was the only remedy under the federal writ of habeas corpus, it finds no support in the statute and has been rejected by this Court in subsequent decisions," and *McNally* was expressly overruled.

We find the reasoning formulated in *Peyton, Sibron* and *Carafas* sound and compelling and, to the extent that *Longway* may stand for the proposition that the habeas corpus Court or this Court on appeal, notwithstanding that the statutorily required "incarceration" at the time of the initiation of the habeas corpus petition did exist, loses jurisdiction to proceed to a final adjudication on the merits under 14 M.R.S.A. §§ 5502–5508 because petitioner has completely served his sentence and has been released from custody, it is overruled.

█ The facts in the instant case, however, are different from those in *Longway.* We deal here, not with a possible illegal sentence, but only with a claim of alleged illegality and unconstitutionality of the revocation-of-parole proceedings. Whatever be the determination of that issue on its merits, the petitioner's sentence is in no way affected. But are there collateral legal consequences flowing from the violation-of-parole record of such substantial nature as to sustain the presence of a justiciable issue before the court and obviate an otherwise moot question?

We do agree that a judge who might be called upon to consider probation or sentence, should Bennett be convicted of other criminal offenses in the future, may be influenced by an unfavorable parole record. A parole board might be hesitant, in the

---

2. 16 M.R.S.A., § 56. Prior conviction as affecting credibility

"No person is incompetent to testify in any court or legal proceeding in consequence of having been convicted of an offense, but *conviction of a felony, any larceny* or any other crime involving moral turpitude may be shown to affect his credibility." (Emphasis added.)

3. 15 M.R.S.A., § 1742. Punishment when previous sentence to State Prison

"When a person is convicted of a crime punishable by imprisonment in the State Prison, and it is alleged and proved in a trial, or admitted in a trial, that he had been convicted and sentenced to any state prison by any court of this State, or of any other state, or of the United States, unless pardoned therefor, he may be punished by imprisonment in the State Prison for any term of years . . . ."

face of an adverse parole record, to implement parole eligibility in favor of the petitioner in case of incarceration upon future criminal convictions. The Fourth and Seventh Circuit Courts of Appeal have viewed these possible consequences as sufficiently substantial to obviate the issue of mootness. Hewett v. State of North Carolina, 1969, 4 Cir., 415 F.2d 1316; Hahn v. Burke, 1970, 7 Cir., 430 F.2d 100. The Fifth Circuit, however, holds to the contrary. Blackburn v. United States Parole Board, 1970, 5 Cir., 429 F.2d 364; Nelson v. United States, 1971, 5 Cir., 443 F.2d 75. The *Michigan* Court, in 1950, had also looked upon the release of the habeas corpus petitioner upon expiration of his sentence as removing from the case the only justiciable issue, thus rendering moot the petition for determination of the propriety of parole revocation and barring any further action, since the right to the relief sought had become unnecessary and its award would serve no useful purpose. See, Ex parte Halley, 1950, 327 Mich. 222, 41 N.W.2d 354.

Bennett does not challenge in these proceedings the underlying conviction in connection with which his parole was revoked. The record of his conviction would remain in full effect notwithstanding the results of the habeas corpus proceeding. His claim that he may suffer actual adverse collateral legal consequences from the revocation of his parole is more imaginary than real. A revocation of parole does not stand on the same level as a conviction of crime. Any judge about to sentence a recidivist will be more interested in the facts underlying the revocation of parole than in the parole record per se. The parole board, charged as it is by law to give deserving convicted persons as early as the law will permit the opportunity of rehabilitating themselves outside the penal institution, will also look behind the parole-revocation record in the exercise of its discretionary powers. This is not the case of an unlawful revocation of parole whereby the parolee, under 34 M.R.S.A., § 1675, has forfeited the deductions for good behavior earned while on parole with the result, if the challenged revocation should stand on habeas corpus, of extending the time to be served on a consecutive sentence, either before or after its term's legal commencement or ending. See, Green v. State, 1968, Me., 245 A.2d 147. The judge prior to sentencing and the parole board prior to granting parole would give the prisoner opportunity to be heard and would most probably inquire into the underlying circumstances which resulted in the revocation of parole. The facts upon which the revocation of parole was based are the real matters which should be considered in the exercise of proper judicial or administrative discretion. The record in itself is not conclusive against the ex-parolee.

Furthermore, the State interest in bringing litigation to an end and to avoid requiring courts, already greatly burdened, to spend a vast amount of time and labor to decide questions of no practical consequence to anyone, militates against a rule which disregards mootness respecting truly conjectural and insubstantial consequences arising from a record of parole revocation.

We hold that any possible collateral consequence which may stem from a record of revocation of parole, such, as claimed, that it might influence a sentencing judge on a subsequent conviction of crime or the parole board in the administration of a future parole, is so minimal, conjectural and insubstantial, in comparison with the State interest to bring litigation to an end, that it does not justify making it an exception to the rule that courts will not decide moot questions or abstract propositions. See, State of Maine v. Osborne, 1947, 143 Me. 10, 54 A.2d 526. We do not view the instant case as falling within the concepts of *Peyton, Sibron* and *Carafas,* supra.

The entry will be

Appeal dismissed.

All Justices concurring.