STATE of Maine

v.

**Calvin L. IRISH, Jr.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1988.
Decided Dec. 23, 1988.

Mary Tousignant, Dist. Atty., Anne H. Jordan (orally), Deputy Dist. Atty., Alfred, for the State.

Craig T. Gardner (orally), Brunelle & Gardner, Saco, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Calvin Irish appeals from an order of the Superior Court (York County, *Fritzsche, J.*) revoking his confinement under intensive supervision [1] and ordering him to serve the

---

1. The sentencing program for intensive supervision is defined as follows:

A sentence to imprisonment with the intensive supervision means a sentence to confinement outside an institution under a set of

remainder of the unsuspended portion of his sentence in institutional confinement (17–A M.R.S.A. § 1265(3) (Supp.1987–1988)). Irish presents two arguments on appeal. He argues first that the court erroneously denied his motion to dismiss for failure to hold a revocation hearing within the seven day time period prescribed by statute. (17–A M.R.S.A. § 1265). He also argues that the condition of intensive supervision which he allegedly violated was unconstitutionally vague in that it failed to give him fair notice of the conduct required of him. The State contends that defendant's appeal is moot because he has now served the remaining portion of his unsuspended term of imprisonment. We agree with the State and dismiss the appeal.

Defendant pleaded guilty to one count of unlawful sexual contact and petitioned the court for intensive supervision. The Superior Court (Brodrick, J.) sentenced defendant to the custody of the Department of Corrections for three years with all but 13 months suspended. The final year of the unsuspended term was to be served with intensive supervision. The court further sentenced defendant to three years probation. In sentencing defendant to intensive supervision the court required that he comply with the following condition: "You are to undergo counseling/treatment as determined by your ISP Officer and to the satisfaction of your ISP Officer. You are to participate in group sexual abuse treatment and comply with all recommendations made by your treatment providers." While on intensive supervision defendant informed his ISP Officer that he was having difficulties with his group sexual treatment counselor. The officer discussed the matter with one of defendant's counselors who explained that she and another counselor had decided that defendant was no longer suitable for treatment in their group. According to her, defendant had threatened other group members and a D.H.S. worker,

and had refused to address certain issues in the counseling sessions. Based on that information, the ISP Officer concluded that defendant had violated his intensive supervision because he was no longer in group treatment and consequently arrested defendant.

On April 5, 1988 the officer filed notice of defendant's violation of his intensive supervision and requested that a hearing be held within seven court days as required by 17–A M.R.S.A. § 1265(2). After rescheduling the hearing three times for various reasons, the court heard evidence regarding the revocation of defendant's intensive supervision on April 20, 1988. The testimony revealed that defendant was reluctant to actively participate in counseling sessions, that he refused to deal with certain issues, and that he behaved in a threatening manner during at least one counseling session. At the close of all the evidence, the court concluded that the State had demonstrated by a preponderance of the evidence that defendant had failed to adequately participate in group sexual abuse treatment and had thus violated a condition of his intensive supervision. As a result, the court imprisoned defendant for the remaining portion of his unsuspended term. This appeal followed.

The State noted in its brief that defendant was scheduled to be released from institutional confinement and to begin his probation on September 2, 1988. At oral argument defense counsel confirmed that defendant had in fact been released. We conclude that defendant's release from institutional confinement renders moot the appeal of his revocation of intensive supervision.

We have repeatedly stated "that courts should decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." *E.g. State v. Gleason,* 404 A.2d 573, 578 (Me.1979). The test generally used to determine mootness "is

rigorous conditions imposed at the time of sentencing. It is an alternative to imprisonment which may be imposed in accordance with this chapter following a period of imprisonment or as the initial unsuspended portion of a split sentence. It is a sentencing alternative available to the courts for those persons who would otherwise have been sentenced to institutional confinement.
17–A M.R.S.A. § 1261(1) (Supp.1987–1988).

whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources." *Id.* We have also recognized three exceptions to the rule of mootness which are as follows:

First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature, may appropriately be decided.

*Id.* (citations omitted).

This Court has never addressed the precise issue whether an appeal from the revocation of intensive supervision is mooted by defendant's release from institutional confinement. We have, however, decided a similar question with regard to the revocation of parole. In *Bennett v. State*, 289 A.2d 28 (Me.1972), the petitioner, while incarcerated, brought an action for post-conviction relief contending that his parole had been illegally and unconstitutionally revoked. The petitioner was discharged from prison before hearing. The Superior Court denied the petition on the merits. We first noted that the Superior Court had jurisdiction to hear the petition because the actual or technical restraint required by the post-conviction relief statute was present at the time of the filing of the petition. *Id.* at 30. We held, however, that the petition for relief was moot and dismissed the appeal.

In *Bennett*, the petitioner argued that the rule of mootness did not require dismissal of his petition because "he [might] suffer actual adverse legal consequences from the revocation of his parole." *Id.* at 32. We recognized that certain collateral consequences might flow from the revocation of petitioner's parole.

We do agree that a judge who might be called upon to consider a probation or sentence, should Bennett be convicted of other criminal offenses in the future, may be influenced by an unfavorable parole record. A parole board might be hesitant, in the face of an adverse parole record, to implement parole eligibility in favor of the petitioner in case of incarceration upon future criminal convictions.

*Id.* at 31–32. We noted, however, that the record of the petitioner's conviction would stand regardless of the post-conviction proceeding. In *Bennett*, we balanced the nature of the collateral consequences against the State's interest in bringing litigation to an end.

[A]ny possible collateral consequence which may stem from a record of revocation of parole … that … might influence a sentencing judge on a subsequent conviction of crime or the parole board in the administration of a future parole, is so minimal, conjectural and insubstantial, in comparison with the State interest to bring litigation to an end, that it does not justify making it an exception to the rule that courts will not decide moot questions or abstract propositions.

*Id.* at 32.

*Bennett* is readily distinguishable from the present case because any adverse consequences in that case were dependent on the possibility of a future conviction. Here, defendant remains under probationary supervision for three years pursuant to the judgment before us. Nevertheless, the conditions of his probation differ significantly from the ISP condition that is the subject of this appeal. Accordingly, the controversial vitality is lost and the State's interest outweighs the "conjectural and insubstantial consequences" to the defendant. We hold therefore that defendant's appeal is moot.

The entry is:

APPEAL DISMISSED.

All concurring.