1998 ME 174

**STATE of Maine**

v.

**George JORDAN.**

Supreme Judicial Court of Maine.

Argued March 4, 1998.

Decided July 14, 1998.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty. (orally), Portland, for State.

David Beneman (orally), Levenson, Vickerson & Beneman, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ *, JJ.

CLIFFORD, Justice.

[¶ 1] The State appeals from a judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) dismissing an indictment against George Jordan on the grounds that the indictment was moot. Jordan cross-appeals from the portion of the judgment denying his motion to dismiss the indictment on double jeopardy grounds. Because the court erroneously concluded that the indictment was moot, we vacate the judgment.

[¶ 2] In July 1994, Jordan was charged with one count of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. §§ 211, 1252(4) (1983 & Supp.1997) and one count of criminal threatening with the use of a dangerous weapon, *id.* §§ 209, 1252(4) (1983 & Supp.1997). Following a jury trial in August 1995, Jordan was convicted on the reckless conduct charge and sentenced to three years of incarceration.[1] Jordan appealed the conviction and, during the pendency of the appeal, remained incarcerated.[2]

[¶ 3] In May 1997, we held that the trial court committed reversible error by admitting evidence of prior bad acts. *See State v. Jordan,* 1997 ME 101, ¶ 7, 694 A.2d 929, 931. We vacated the judgment of conviction and remanded the matter for proceedings consistent with our opinion. *See id.* at ¶ 8, 694 A.2d at 932.

[¶ 4] On remand, the case was placed on the July 1997 trial list. The State moved for a special assignment, citing, among other things, the necessity of arranging for the presence of several essential witnesses at trial and for transportation of Jordan, who was incarcerated at a federal facility in Pennsylvania.[3] The motion was granted without objection.

[¶ 5] In September 1997, Jordan moved to dismiss the single pending count of the indictment, arguing that the Double Jeopardy Clauses of the Maine and United States Constitutions precluded the State from retrying him on a count for which he had completed his entire sentence. He also argued that the indictment was moot. Following a hearing, the court granted the motion and dismissed the indictment, ruling that although the Double Jeopardy Clauses did not prohibit Jordan's retrial, the indictment was nonetheless moot given that he had completed his original three-year sentence.

[¶ 6] Both Jordan and the State filed motions for reconsideration, which the court denied, stating specifically that the indictment was dismissed with prejudice. The State appealed, pursuant to M.R.Crim. P. 37B and 15 M.R.S.A. § 2115–A (1980 & Supp.1997), and Jordan cross-appealed. The State challenges the court's mootness conclusion and Jordan challenges its conclusion that the Double Jeopardy Clause does not bar his retrial.

### I. Double Jeopardy

[¶ 7] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, *see Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969), provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V; *see also* Me. Const. art. I, § 8. The state and federal constitutional protections against double

---

* Justice Lipez sat at oral argument and participated in the initial conference, but retired prior to the adoption of this opinion.

1. Jordan was acquitted of the criminal threatening charge.

2. The record shows that, after the jury verdicts were returned, the court ordered that Jordan be held without bail. The record does not, however, establish whether Jordan applied for post-conviction bail pursuant to 15 M.R.S.A. § 1051 (Supp.1997). We assume for purposes of this appeal that an application for post-conviction bail would have been denied, and therefore Jordan's sentence would not have been stayed pursuant to M.R.Crim. P. 38(a).

3. In 1997, the First Circuit Court of Appeals affirmed Jordan's convictions of mail fraud and money laundering. *See United States v. Jordan,* 112 F.3d 14 (1st Cir.) *cert. denied* —— U.S. ——, 118 S.Ct. 318, 139 L.Ed.2d 245 (1997). He remains incarcerated in Pennsylvania.

jeopardy are coterminous. *See State v. Wilson,* 671 A.2d 958, 960 (Me.1996). "Whether a criminal prosecution violates the federal or state constitutional prohibition against double jeopardy is a question of law." *State v. Christen,* 678 A.2d 1043, 1044–45 (Me.1996).

 [¶ 8] It is well-settled that the Double Jeopardy Clause does not bar retrial of a defendant when the defendant's conviction is set aside on grounds other than sufficiency of the evidence. *See, e.g., Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *State v. Cotton,* 673 A.2d 1317 (Me.1996); *State v. Bessey,* 328 A.2d 807 (Me.1974). Because Jordan's conviction was vacated on grounds other than sufficiency of the evidence, the Double Jeopardy Clause does not prohibit the State from retrying him. That Jordan has fully served the sentence imposed after the first trial does not alter this conclusion. Jordan's argument that Double Jeopardy precludes reprosecution following reversal of a conviction when the defendant has served the original sentence ignores the significant distinction between a conviction and a sentence. Although Jordan may have acquired a legitimate expectation of finality in the sentence, he could have no such expectation in the finality of the prosecution. *Cf. United States v. Scott,* 437 U.S. 82, 99, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978) ("the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice."). The trial court properly denied Jordan's motion to dismiss the indictment on Double Jeopardy grounds.

### II. Mootness

[¶ 9] After determining that the Double Jeopardy Clause did not prohibit Jordan's retrial, but did prohibit an increase of his sentence beyond that which was originally imposed and served, the trial court concluded that "[t]he adverse effect on Jordan of any retrial would be limited to the trial itself, and whatever collateral consequences may flow from a conviction." Based on this conclusion, the court held that the indictment was moot because the State's reasons for retrial were insufficiently compelling to justify the expenditure of limited judicial resources. The State disputes this conclusion, asserting that its interests in securing convictions for offenders' records are sufficient to preclude a finding of mootness. We agree with the State.

 [¶ 10] The concept of mootness is based on the principle that "courts should decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." *State v. Gleason,* 404 A.2d 573, 578 (Me. 1979). The test for mootness is whether sufficient practical effects would flow from a retrial to justify the expenditure of limited judicial resources. *See State v. Irish,* 551 A.2d 860, 861–62 (Me.1988). An exception to the mootness rule exists when relief is justified on the basis that sufficient collateral consequences will result from that relief. *See id.* at 862.

 [¶ 11] Maine law clearly establishes that an appeal from a judgment of conviction by a defendant who voluntarily completed his sentence is moot. *See, e.g., State v. Snowman,* 1997 ME 184, ¶¶ 3, 5, 698 A.2d 1057, 1058; *State v. Osborne,* 143 Me. 10, 14, 54 A.2d 526, 528 (1947). Citing *Snowman* and *Osborne,* the trial court engaged in the following mootness analysis:

> [if] the interest of a [defendant] to be free from an allegedly erroneous criminal finding is insufficient to overcome the courts' reluctance to decide matters of minimal controversy, [then] certainly the State's interest in obtaining a conviction with no demonstrable significant consequences cannot be allowed a greater weight.

Our analysis of the mootness issue leads us to a different conclusion. *Snowman* and *Osborne* are inapposite, since those cases involved voluntary completion of the sentence or payment of a fine. *See Snowman,* 1997 ME 184, ¶ 5, 698 A.2d at 1058; *Osborne,* 143 Me. at 14, 54 A.2d at 528. When balancing a defendant's attempt to clear his record against "the practical notion that courts should not give gratuitous advice ... we look to the actions of the defendant." *Snowman,* 1997 ME 184, ¶ 5, 698 A.2d at 1058. Unlike the defendants in *Snowman* and *Osborne,*

Jordan did not voluntarily complete his sentence.

[¶ 12] In *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court stated that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Id.* at 57, 88 S.Ct. at 1900. The Court "acknowledged the obvious fact ... that most criminal convictions do in fact entail adverse collateral legal consequences." *Id.* at 55, 88 S.Ct. at 1899; *see also* J.P. Ludington, Annotation, *When Criminal Case Becomes Moot so as to Preclude Review or Attack on Conviction or Sentence*, 9 A.L.R.3d 462, § 8(d) (1966 & Supp.1997). Recently, the Court reaffirmed that "in the context of criminal conviction[s], the presumption of significant collateral consequences is likely to comport with reality." *Spencer v. Kemna*, — U.S. —, —, 118 S.Ct. 978, 985, 140 L.Ed.2d 43 (1998). We have recognized that *Sibron* "abandon[s] all inquiry into the actual existence of specific collateral consequences resulting from convictions of crime and in effect presume[s] that they exist[ ]." *Bennett v. State*, 289 A.2d 28, 31 (Me.1972).[4]

■ [¶ 13] The collateral consequences that prevent a determination that the defendant's appeal from a judgment of conviction is moot also prevent a determination that the indictment is moot. If the defendant has an interest in avoiding the collateral consequences of a conviction, then the State has an equally compelling interest in securing a conviction to effect those consequences. This is true even if we assume that the Double Jeopardy Clause would prevent the imposition of further punishment following a conviction after retrial, because the defendant fully served the original sentence. *See, e.g., United States v. Silvers*, 90 F.3d 95 (4th Cir.1996) (holding that the Double Jeopardy Clause prohibits sentence enhancement after the defendant has completed the originally imposed sentence); *United States v. Arrellano–Rios*, 799 F.2d 520, 525 (9th Cir.1986) (same). The trial court erred by dismissing the indictment on mootness grounds.[5]

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

4. In *Bennett*, we held that a habeas corpus petition alleging unlawful parole revocation was rendered moot by the expiration of the defendant's sentence. *See Bennett v. State*, 289 A.2d at 32. Similarly, we have held that an appeal from an order revoking the defendant's confinement under intensive supervision was rendered moot by the defendant's release from institutional confinement. *See State v. Irish*, 551 A.2d 860 (Me. 1988). In both *Bennett* and *Irish*, we concluded that the collateral consequences exception to the mootness rule did not apply: any adverse consequences resulting from the revocations did not sufficiently outweigh the State's interest in ending the litigation. *See Bennett*, 289 A.2d at 32; *Irish*, 551 A.2d at 862. Neither case, however, involved an appeal from a judgment of conviction. In *Bennett*, we specifically distinguished an appeal from a parole revocation and an appeal from a conviction:

> Bennett does not challenge in these proceedings the underlying conviction in connection with which his parole was revoked. The record of his conviction would remain in full effect notwithstanding the results of the habeas corpus proceeding. His claim that he may suffer actual adverse collateral legal consequences from the revocation of his parole is more imaginary than real. *A revocation of parole does not stand on the same level as a conviction of crime.*

*Bennett*, 289 A.2d at 32 (emphasis added).

5. Because we conclude that the indictment was not moot, we need not reach the State's contention that the dismissal violated the separation of powers doctrine by usurping the executive branch's authority to prosecute crimes.