STATE OF MAINE                 SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-04-363

PORTLAND WATER DISTRICT,

                    Plaintiff

                                                  ORDER ON PLAINTIFF'S
        v.                                        MOTION TO STRIKE AND
                                                  MOTION FOR SUMMARY
INHABITANTS OF THE                                     JUDGMENT
TOWN OF STANDISH,

                    Defendant

This matter is before the court on the motions of the plaintiff Portland Water

District ("District") for summary judgment and to strike certain allegations in the

Affidavit of Mary E. Chapman submitted in support of the defendant's opposition

to the motion for summary judgment.

## BACKGROUND

This is an action for declaratory relief regarding certain land adjacent to

Sebago Lake in Standish, Maine. The District is a quasi-municipal, special-purpose

district, organized under private and special laws enacted by the Maine Legislature,

and it is governed by an Elected Board of Trustees. The District provides water

services to nearly 200,000 people in specific geographic portions of the Greater

Portland area.

Northeast Road Extension ("Northeast Road") is a traveled public way that

runs from Route 35 to the shore of Sebago Lake. Among other things, the public

1

uses Northeast Road to access a boat launch on the shore of the lake. In the course of using the boat launch, the public parks vehicles and boat trailers on land on both sides of the Northeast Road ("Adjacent Land") and crosses it to access Maple Street.

The District owns the Adjacent Land[1] and has filed this declaratory judgment action seeking a determination that members of the public have no prescriptive rights to cross or use the Adjacent Land for public purposes.

## DISCUSSION

In support of its motion for summary judgment, the District asserts that: (1) In 1935, it obtained title to the Adjacent Land by two deeds from the Portland and Ogdensburg Rail Road Company;[2] (2) when acquired by the District, the Adjacent Land was unencumbered by any public prescriptive easement; and (3) under applicable Maine law, the public cannot obtain a prescriptive right in the District's property because it is a political subdivision of the State of Maine. The defendant Town of Standish, ("Town") takes issue with the second and third assertions.

---

[1] *See* two deeds from the Portland and Ogdensburg Railway to Plaintiff Portland Water District, both dated March 23, 1935, and recorded in the Cumberland County Registry of Deeds at Book 1468, Page 487 and at Book 1468, Page 491.

[2] Although the District initially sought a declaration as to ownership of a portion of the Northeast Road, it has amended its Complaint and eliminated the claim relating to the Northeast Road. *See* Pl.'s Notice of Filing Amend. Compl.; and Pl.'s Amend. Compl.

2

The District has also filed a motion to strike portions of the affidavit of Mary Chapman, the Town Clerk of Standish, ("Ms. Chapman") submitted by the Town in support of their opposition to the District's motion for summary judgment.

A.    Motion to Strike

The Town claims that there exists a material issue of fact as to whether the District's ownership of the Adjacent Land is subject to a reservation of right by the Town to accept an incipient dedication of a two-rod-wide strip lying adjacent to the Northeast Road. The Town claims that this right dates back to an original dedication of the Northeast Road in 1767. The Town also claims that it has raised a material issue of fact as to whether the public has acquired prescriptive rights to the Adjacent Land through its continuous use of the land over a period greater than 20 years during the late 1800's and early 1900's.

The key facts asserted by the Town in support of these claims are propounded in the affidavit of Ms. Chapman. Because the affidavit serves as the foundation for the Town's assertions, the court will first consider the District's motion to strike.

In her affidavit, Ms. Chapman states that she is the custodian of the Town's records and, throughout, testifies to a number of current and historical facts by referencing "official Town records." For example, in paragraph 15, Ms. Chapman states:

3

According to my official Town records, during the height of train passenger service to Sebago Lake in the late 1800's and early 1900's, Lower Bay of Sebago Lake was a hub of human activity. According to my official Town records, there existed commercial ice cutting businesses, icehouses, sawmills, hotels, large employee housing barracks, boat rentals, hydroplane rentals and the steamboat wharf all in the immediate vicinity of the Sebago Lake train station.

*Id.* ¶ 15.

Ms. Chapman further testifies that, based on photographs contained in the Town's official records, the land in issue was "used by the general public in . . . the time period 1870 to 1935." *Id.* ¶ 16. She also states that, according to her official town records, "there is no evidence that the Town, through Town meeting or otherwise, received a license, easement or other permission from the railroad company to use the company's property in the vicinity of Northeast Road Extension . . .." *Id.* ¶ 17.

The District has moved to strike paragraphs 9-21, 23-24 and 26, arguing that Ms. Chapman may not give testimony about (1) activities on the Adjacent Land prior to 1935, (2) the substantive content of town records, or (3) her opinions about those records. In addition, the District points out that because she has failed to attach copies of many of the records cited in her affidavit, the court cannot determine whether the documents are admissible under M.R. Evid. 803(6), 803(8) or 803(10).

The Town makes two arguments in opposition to the motion to strike: first, that each of the assertions in the Town's Statement of Material fact that are based on Ms. Chapman's affidavit should be deemed admitted because the District merely objected to them and did not specifically admit, deny or qualify them as required by M.R. Civ. P. 56(h)(3); and, second, that the statements in the affidavit are admissible under the public records exception to the hearsay rule. M.R. Evid. 803(8). According to the Town, because Ms. Chapman is the official custodian of the Town's records, she is competent to testify to the content of such records so long as she does not purport to offer legal conclusions based upon that content.

The District is correct that, although Ms. Chapman testifies to the content of "official Town records" in paragraphs 10, 12-15, 18-21, 23, 24 and 26 of her affidavit, she does not attach those records as required by Rule 56(e) and applicable Maine law.[3] M.R. Civ. P. 56(e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."). *See also Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 266 (Me. 1985); and *Creamer v. Danks*, 700 F. Supp. 1169, 1171 n.3 (D. Me. 1988)

---

[3] Although the District also objects to paragraph 17 due to failure to attach the records, paragraph 17 states that, according to Ms. Chapman's official Town records, "there is *no* evidence that the Town . . . received a license, easement, or other permission . . . to use the company's property . . .." Def.'s Additional S.M.F. ¶ 17. Accordingly, there is no record to attach and, under M.R. Civ. P. 44(b), Ms. Chapman may testify as to the absence of a public record. *See* M.R. Civ. P. 44(b); M.R. Evid. 803(10) & 902(4); and Field & Murray, *Maine Evidence* § 803.10 at 460-61 (2000 ed.). Accordingly, the court denies the District's Motion to Strike with regard to paragraph 17.

(explaining that "in deciding the merits of the summary judgment motion, the court is restricted to those portions of an affidavit which meet the requirements of Rule 56(e)"). Accordingly, those paragraphs of Ms. Chapman's affidavit are stricken.

However, the other paragraphs at issue, 9, 11, and 16, do not suffer the same infirmity because the records cited in them are attached to the affidavit. For that reason, the court next considers the District's argument that those paragraphs include factual and legal conclusions that cannot form the basis for any asserted facts.

In *Town of Orient v. Dwyer*, 490 A.2d 660, 662 (Me. 1985), the Law Court explained that "[c]onclusions of fact and law do not properly belong in an affidavit filed in support of a motion for summary judgment." *Id.* (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2738 at 486-89 (2d ed. 1983)). Further, a movant should not "rely upon statements purporting to describe the substance or to interpret the contents of documents." *Id.*

In paragraphs 9, 11, and 16, Ms. Chapman purports to describe the contents of various documents. In paragraph 9, she states, "According to the County Commissioners' redefinition of Northeast Road Extension plan [attached and incorporated into paragraph 8 of her affidavit], there existed a float at the end of Northeast Road Extension as of July 1933." In paragraph 11, she asserts:

6

According to my official Town records[4], there is a two rod wide strip (the difference between the original eight rod wide rangeway layout and the six rod wide town way) that has been retained by the Proprietors of Pearsontown, and the Town has reserved the right to accept the incipient dedication of that two rod wide portion of the rangeway that has not yet been made a part of the six rod wide public road.

Chapman Aff. ¶ 11. And, in paragraph 16, she states:

There exist many photographs of the Sebago Lake train station and steamboat service areas in the Town's official records, showing what a large area of Portland and Ogdensburg Railway's property was used by the general public in the vicinity of Northeast Road Extension and Maple Street in the time period of 1870 to 1935. A true copy of these photographs is attached hereto as *Exhibit 5* and incorporated herein by reference. These photographs are public records setting forth regularly conducted and regularly recorded business activities of the Town.

Chapman Aff. ¶ 16.

Although there exists an exception to the hearsay rule for public records, that rule operates, when applicable, to make the public records themselves admissible. M.R. Evid. 803(8). And, while the custodian of the records may certify to their authenticity, Rule 803(10) does not abrogate the requirements of M.R. Civ. P. 56(e) that the documents themselves be attached to an affidavit, nor does it give the custodian license to draw conclusions about the documents' content. Accordingly, to the extent that paragraphs 9, 11, and 16 of Ms. Chapman's affidavit improperly purport to describe the substance of the cited public records and draw conclusions

---

[4] Here, the content of Ms. Chapman's assertions makes sufficiently clear that she is referring to the attached Chapman Exhibits 1 and 2.

7

based upon them, those paragraphs are improper and the District's motion to strike them is granted. However, to the extent these paragraphs merely authenticate attached documents, the documents themselves will be considered as record citations in support of the Town's statements of material fact purporting to rely on ¶¶ 9, 11, and 16 of Ms. Chapman's affidavit.

Finally, those paragraphs in the Town's Statement of Additional Material Facts that are based upon the stricken paragraphs of Ms. Chapman's affidavit are not deemed admitted by virtue of the District's failure to designate its response as an admission, denial, or qualification. *See* M.R. Civ. P. 56(h)(2) & (4). Although Rule 56(h)(2) does require that each opposing statement "shall begin with the designation 'Admitted,' 'Denied,' or 'Qualified' . . ." there is no such obligation when the statements of fact are legally insufficient. M.R. Civ. P. 56(h)(4) (stating, "facts contained in a supporting or opposing statement of material facts, *if supported by record citations as required by this rule*, shall be deemed admitted unless properly controverted." (emphasis added)); *cf. Nynex Worldwide Servs. Group, Inc. v. Dineen*, 1999 ME 166, ¶ 7, fn. 1, 740 A.2d 568, 570, fn. 1 (reserving the question, under former M.R. Civ. P. 7(d), of whether a party on summary judgment has an obligation to respond to legally insufficient statements of material fact.)

The District is not required to admit, deny or qualify any of the Town's statement of additional facts that are not supported by proper record citations. M.R. Civ. P. 56(h)(4). Raising an objection is all that the Water District is required to do. *See Dineen*, 1999 ME 166 at ¶ 7 (finding that a party's failure to file an opposing statement of material facts was fatal to later objections to the moving party's original statement of material facts.)

B.      Motion for Summary Judgment

When considering a motion for summary judgment, the court views the evidence presented by the statements of material fact and reasonable inferences that may be drawn from that evidence in the light most favorable to the party against whom summary judgment is sought, to determine if the parties' statements of material fact and the record evidence reveal a genuine issue of material fact. *Kinney v. Maine Mut. Group Ins. Co.,* 2005 ME 70, ¶ 15, 874 A.2d 880, 884 (citing *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747; and *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179).

1.      The District's Ownership of the Adjacent Land

The District obtained title to the Adjacent Land in 1935 by two deeds from the Portland and Ogdensburg Rail Road Company. The Town counters that the District cannot establish an unencumbered fee in all of the property covered by the 1935 deeds. However, the District does not contend that there are no recorded

rights encumbering the Adjacent Land. Rather, it seeks a declaration that the public has not established unrecorded prescriptive rights to use that land. Any judgment favorable to the District in this action will have no effect on any established, recorded road running through the Adjacent Land, or any licenses granted to the Town by the District, or any deeded rights and interests belonging to the State of Maine.

The Town also claims that there is a disputed issue of material fact with respect to whether it has a claim to a two-rod strip of land adjacent to the Northeast Road, and cites Ms. Chapman's affidavit at ¶ 11 to support this assertion. However, as previously noted, although the governmental records, Chapman Exhibits 1 and 2, referenced in that paragraph and attached to Ms. Chapman's affidavit are properly before the court, her assertion in ¶ 11 that "there is a two rod wide strip [adjacent to the Northeast Road]. . . and the Town has reserved the right to accept the incipient dedication of that two rod wide portion of the rangeway that has not yet been made a part of the six-rod-wide public road" is stricken because it makes conclusions of fact and law about the attached records.

A review of the records themselves establishes that they create no material issue of fact as to whether the Town has a claim to a two-rod strip of land adjacent to the Northeast Road. Chapman Exhibit 1 is a copy of the minutes of a March 31, 1767 meeting of the Proprietors of Pearsontown, who were predecessors in interest

to the Town of Standish. These minutes tend to establish that an eight-rod-wide road was voted established according to a plan of that date, where the six-rod-wide Northeast Road now runs. Chapman Exhibit 2 is a September 9, 1997 notice of the Town of Standish's decision to extend the time allowed for it to accept a list of "paper streets," – i.e. proposed but as-yet-unaccepted ways. However, this list does not include any paper street established according to the March 31, 1767 plan, and the Town's assertion that the "Range Map of Standish from Original Plan of 1860," referenced on this list, includes this eight-rod-wide paper road is not supported by any record evidence before the court. Therefore, to the extent the Town argues that the District took the Adjacent Land in 1935 subject to a right of the Town to "accept" the dedicated two rods of width surrounding the current six-rod road, its argument is not supported by record citations and, thus, raises no genuine issue of material fact.

2.    Application of the *Nullum Tempus* Maxim

Generally, a party asserting an easement by prescription must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Shadan v. Town of Skowhegan*, 1997 ME 187, ¶ 6, 700 A.2d 245, 247 (quoting *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130 (Me. 1984)). When, however, the

11

land at issue is owned by a governmental entity, Maine courts have applied the common law maxim *nullum tempus occurrit regi*[5] to foreclose adverse possession and prescriptive easement claims. *See Loavenbruck v. Rohrbach*, 2002 ME 73, ¶ 14, 795 A.2d 90, 94.

Although the Law Court has explicitly applied the *nullum tempus* maxim in order to shield the State and its municipalities from claims of adverse possession and prescriptive easement, the court is unaware of any case in which it has addressed whether the shield also applies to quasi-municipal corporations. *See e.g. Loavenbruck*, 2002 ME 73, ¶ 9, n.4, 795 A.2d at 93; and *Stickney v. City of Saco*, 2001 ME 69, ¶ 25, 770 A.2d 592, 603.

The Law Court has previously explained that the District is a public entity that performs governmental functions. *See Opinion of the Justices*, 253 A.2d 309, 311 (Me. 1969). Although the Law Court did not address the issue in a context directly applicable to this case, the District's role was discussed and examined in a way that is instructive. In that *Opinion*, the court was asked to determine, in part, whether legislation granting a "franchise" to the District to provide sewer service for an undetermined length of time violated the Constitutional prohibition against granting franchises to a "corporation" or "individual" that extend more than one

---

[5] This Latin maxim ("no time runs against the state") is the principle upon which government entities' immunity from adverse possession claims is based. See *Stetson v. Bangor*, 73 Me. 357 (Me. 1882) and *Phinney v. Gardner*, 115 A. 523 (Me. 1921). "The purpose of the rule is to fully protect public rights and property from injury." BLACK'S LAW DICTIONARY 1096 (7th ed. 1999).

year. *Id.* at 335. The court first noted that providing water and sewer service is a "governmental function." *Id.* at 311. The court then concluded that the District is a governmental entity because it is both a "body corporate and body politic" and not just a corporation. *Id.* at 335. Accordingly, granting the franchise did not violate the Maine Constitution. *Id.*

In addition, the Law Court has previously explained that water districts have a "purely public" purpose to provide surrounding communities with a water supply. *See Augusta v. Augusta Water District*, 63 A. 663, 664 (Me. 1906). Because a water district is created by the Legislature to serve a public function, it "is an agency, so far as supplying water is concerned, in municipal government." *Id.* The court is persuaded that, although some aspects of the District's operation are proprietary, it is a political subdivision and serves a sufficiently public purpose to warrant the same level of protection that other governmental entities do with respect to adverse possession and prescriptive easement claims. *See Phinney v. Gardner*, 121 Me. 44, 48-49 (Me. 1921); *see also Burlington v. Hospital Admin. Dist. No. 1*, 2001 ME 59, ¶ 15, 769 A.2d 857, 862.

Although the Town urges that the foundations of the *nullum tempus* maxim have been eroded and that common law protections of governmental land may no longer be justified, the Law Court, as recently as 2002, has made clear that

recognition of those protections continues to be the law in Maine. *See*

*Loavenbruck*, 2002 ME 73, ¶ 12, 795 A.2d at 93.

3.   Did the Town Acquire a Public Easement Prior to 1929?

The Town asserts that, even if it has not acquired prescriptive rights to the

land after the District had acquired it in 1935, the public acquired prescriptive

rights in the land prior to 1935.[6] Several of the Town's assertions in its statement

of additional material facts, particularly SAMF ¶¶ 24-28, purports to establish that

the public made continual use of the Adjacent Land for a number of years prior to

1929.   However, as stated above, the conclusions of fact supplied by Ms.

Chapman's affidavit are legally insufficient in themselves to create a material issue

of fact concerning the public's continual use of the Adjacent Land prior to 1929.

Further, an examination of the governmental records interpreted by Ms.

Chapman in her affidavit, the photographs included in Chapman Exhibit 5 and the

plat supplied at Chapman Exhibit 4, do not support the Town's claim of fact that

the Adjacent Land was used by the general public in the time period 1870 to 1935.

The photographs, authenticated by Ms. Chapman, tend to establish only that the

Sebago Lake Train station existed as of the turn of the century.   There is no

indication from these photographs, however, that the Adjacent Land was occupied

---

[6] The Town also recognizes that the Railroad, which had owned this land prior to 1935, was protected by a law, enacted in 1929, prohibiting adverse possession claims to land owned by railroad companies. *See* Def.'s Opp. to Pl.'s Mot. Summ. J. at 5-7 (citing R.S. ch. 259 (1929) (*codified at* 23 M.R.S.A. § 6025) and *Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535 (Me. 1992)).   The Town argues, however, that it had acquired prescriptive rights in the land prior to 1929, as well.

14

by the public during the period 1870 to 1929. The Town has provided no exhibits demarcating which part of the photographs, if any, display the Adjacent Land or the public's use of it. Additionally, the plat supplied at Chapman Exhibit 4 establishes only that, as of 1933, a public float existed at the end of the North East Road Extension, in the vicinity of the Adjacent Land. This post-dates the relevant period for purposes of this analysis, and therefore does not create a material issue of fact as to the public's use of the Adjacent Land prior to that date.

Accordingly, the Town has failed to establish a genuine issue of material fact on this issue and has failed to meet its burden with respect to any public use of the Adjacent Land prior to 1929. *Shadan*, 1997 ME 187, ¶ 6, 700 A.2d at 247 (explaining that, in order to state a *prima facie* claim for a prescriptive right, a party must allege facts tending to show "continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed"). Because there exist no disputed material facts relating to whether the Town acquired prescriptive rights prior to the District's ownership, and because the Town may not claim a prescriptive easement for the time of the District's ownership of the Adjacent Land, the District is entitled to summary judgment.

DECISION

Based upon the foregoing, and pursuant to M. R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is:

A.  Plaintiff's Motion to Strike portions of the Affidavit of Mary Chapman is DENIED as to ¶ 17, and GRANTED as to ¶¶ 9-16, and ¶¶ 18-23;

Provided, however, to the extent that ¶¶ 9, 11, and 16 merely authenticate documents attached to the Chapman affidavit, the motion is DENIED and the documents themselves are admissible as record citations in support of the Town's Statements of Material Fact which purport to rely on ¶¶ 9, 11, and 16 of the affidavit;

B.  Plaintiff's Motion for Summary Judgment is GRANTED, and it is hereby ADJUDGED and DECLARED that

The public has not acquired, and does not have, any prescriptive rights to cross or use the land of Plaintiff Portland Water District situated in the Town of Standish, County of Cumberland and State of Maine, on the Southerly and Southwesterly shore of Sebago lake, and being adjacent to and on both sides of Northeast Road Extension, so-called, which land of Plaintiff is more particularly bounded and described in two deeds from the Portland and Ogdensburg Railway to Plaintiff, both dated March 23, 1935, and recorded in the Cumberland County Registry of Deeds at Book 1468, Page 487 and at Book 1468, Page 491.

Dated: November 14, 2005

_____
Justice, Superior Court

16

PORTLAND WATER DISTRICT - PLAINTIFF

Attorney for: PORTLAND WATER DISTRICT
WILLIAM HARWOOD  - RETAINED 06/03/2004
VERRILL & DANA
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586

Attorney for: PORTLAND WATER DISTRICT
SETH BREWSTER  - RETAINED 06/03/2004
VERRILL & DANA
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586


vs
INHABITANTS OF THE TOWN OF STANDISH - DEFENDANT
'
Attorney for: INHABITANTS OF THE TOWN OF STANDISH
SALLY DAGGETT  - RETAINED 02/16/2005
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112

Attorney for: INHABITANTS OF THE TOWN OF STANDISH
KENNETH COLE  - RETAINED 03/08/2005
JENSEN BAIRD ET AL
10 FREE STREET
PO BOX 4510
PORTLAND ME 04112

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CV-2004-00363

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: DECLARATORY JUDGMENT
Filing Date: 06/03/2004

## Docket Events:

06/03/2004 FILING DOCUMENT - COMPLAINT FILED ON 06/03/2004

06/04/2004 Party(s):  PORTLAND WATER DISTRICT
           ATTORNEY - RETAINED ENTERED ON 06/03/2004
           Plaintiff's Attorney: WILLIAM HARWOOD

06/04/2004 Party(s):  PORTLAND WATER DISTRICT
           ATTORNEY - RETAINED ENTERED ON 06/03/2004
           Plaintiff's Attorney: SETH BREWSTER

06/10/2004 Party(s):  PORTLAND WATER DISTRICT
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 06/10/2004

06/10/2004 Party(s):  PORTLAND WATER DISTRICT
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 06/04/2004
           UPON TOWN OF STANDISH TO MARY CHAPMAN, TOWN CLERK. (GA)

STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        DOCKET NO. CV-04-363

PORTLAND WATER DISTRICT,

                          Plaintiff

                                                        ORDER ON PLAINTIFF'S
        v.                                              MOTION FOR STAY
                                                        PENDING APPEAL

INHABITANTS OF THE
TOWN OF STANDISH,

                          Defendant

        This matter is before the court on the motion of the defendant Town of

Standish ("Town") for a stay pending its timely appeal of the court's order granting

a declaratory judgment ("Order") on the motion of the plaintiff Portland Water

District ("District") for summary judgment. In particular, the Order declared that

> The public has not acquired, and does not have, any prescriptive rights
> to cross or use the land of Plaintiff Portland Water District situated in
> the Town of Standish, County of Cumberland and State of Maine, on
> the Southerly and Southwesterly shore of Sebago lake, and being
> adjacent to and on both sides of Northeast Road Extension, so-called
> ....

Order at 16. The parties agree that, prior to the Order, and since at least 1964, the

Town had been maintaining the disputed area ("Adjacent Land") year-round, and

the public had been using the Adjacent Land for parking and access to the boat

launch.

1

Following entry of the Order, the Town continued to plow and maintain the Adjacent Land, and the public continued to cross it and park on it. By letter dated December 2, 2005, the District ordered the Town to cease and desist maintaining the land and to relocate a portion of the Northeast Road Extension. The Town's motion for a stay pending the appeal followed.

## DISCUSSION

Although the Town asserts that its appeal operates as an automatic stay on enforcement of the Order under M.R. Civ. P. 62(e), it nevertheless requests a stay in order to clarify and assure that its continuing use and maintenance of the Adjacent Land during the pendency of the appeal is not a trespass.

The District argues that Rule 62(e)'s application is limited to a stay of execution on monetary judgments. However, this assertion is not supported either by the plain language of the rule, M.R. Civ. P. 62(a) and (e), or by the case to which it cites, *Hazzard v. Westview Golf Club, Inc. See* 217 A.2d 217, 224 (Me. 1966). The only judgments *not* automatically stayed under Rule 62(e) are injunctions, judgments in receivership actions, and orders relating to the care, custody and support of minor children or to the separate support or personal liberty of a person. M.R. Civ. P. 62(a). In addition, *Hazzard* says nothing about 62(e) being limited to a stay of execution on monetary judgments. It merely acknowledges that an appellant must take affirmative steps to preserve the status

2

quo in appeals from judgments granting injunctive relief or from judgments in receivership actions.

The court agrees with the Town that the rule does impose an automatic stay of the declaratory judgment in this case during the pendency of the appeal. Because the judgment is already stayed, the Town's motion is unnecessary and moot. *State v. Irish*, 551 A.2d 860, 861 (Me. 1988) ("courts should decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." (quoting *State v. Gleason*, 404 A.2d 573, 578 (Me. 1979).[1]

The only effect of such a stay, however, is to hold in abeyance the court's determination of the parties' rights in the Adjacent Land. This neither satisfies the Town's request that the court declare lawful its continuing use and maintenance of the land, nor allows the District to enforce any rights in the land against the Town. For this reason, the Town has also requested that the court exercise its injunctive power under Rule 62(g) to allow the Town to maintain and use the Adjacent Land

---

[1] None of the recognized exceptions to the rule of mootness are present in this case:

> First, [] whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, [whether] questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. Third, [whether] issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature may appropriately be decided.

*State v. Irish*, 551 A.2d at 862.

without the District's interference. For its part, the District has responded in opposition to this request.[2] M.R. Civ. P. 62(g).

Rule 62(g) recognizes the court's power to grant an injunction pending appeal that "preserve[s] the status quo or the effectiveness of the judgment subsequently to be entered." *Id.* Both parties agree that the outcome is determined under the four-part test for granting preliminary injunctions.

> A party seeking injunctive relief [] must demonstrate that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (*at most, a probability; at least, a substantial possibility*); and (4) the public interest will not be adversely affected by granting the injunction. [citations omitted].

*Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129 (citing *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989); *Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982)) (emphasis added). "A failure to demonstrate that any one of these criteria are met requires that injunctive relief be denied." *Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 10.

Applying this test, the court agrees with the District that the Town has not demonstrated a likelihood of success on the merits of its appeal. The Town argues

---

[2] The District correctly points out that a mere "stay" of the court's judgment, as requested by the Town, cannot encompass granting affirmative rights to the Town to continue its maintenance and use of the Adjacent Land pending appeal. However, because both parties have treated the Town's motion as a request by the Town to be allowed to continue to maintain and use the Adjacent Land pending the appeal, the District is not prejudiced by a consideration of the Town's motion as a request for injunctive relief pursuant to Rule 62(g).

4

that because the singular basis for the declaratory judgment – application of the *nullum tempus* rule to protect quasi-municipal corporations, such as the District, against prescriptive claims – has not been conclusively established by the Law Court and because, in the absence of that rule, the Town would almost certainly have established prescriptive rights in the Adjacent Land, the Town has established a likelihood of success on the merits of its appeal. However, mindful of its analysis of the *nullum tempus* rule in the Order, the court concludes that, although the Town argues well, it has not demonstrated "at least a substantial possibility" of success on the merits. Accordingly, its request for injunctive relief pending appeal must be denied.

## DECISION

Based upon the foregoing, and pursuant to M. R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is:

> Defendant's Motion For Stay Pending Appeal is moot and, therefore, DENIED; and

> Defendant's Request for injunctive relief during the pendency of the appeal is DENIED.

Dated: January 17, 2006

_____
Justice, Superior Court

5

= COURTS
nd County
ox 287
ıe 04112-0287

WILLIAM HARWOOD ESQ
PO BOX 586
PORTLAND ME 04112

F COURTS
ınd County
ıox 287
ıe 04112-0287

KENNETH COLE ESQ
PO BOX 4510
PORTLAND ME 04112