2000 ME 199

**Christina NORTHUP et al.**

v.

**Virgil POLING.**

Supreme Judicial Court of Maine.

Argued Oct. 5, 2000.

Decided Nov. 13, 2000.

Barry K. Mills (orally), Hale & Hamlin, LLC, Ellsworth, for plaintiffs.

Robert S. Frank (orally), Harvey & Frank, Portland, for defendant.

Andrew Ketterer, Attorney General, Christopher C. Taub, Asst. Attorney General (orally), Robert C. Perkins, Asst. Attorney General, Augusta, for intervenor State of Maine.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Christina Northup and Susan Norberg, trustees of the Poling Family Realty Trust, appeal from a judgment entered in the Superior Court (Hancock County, *Hjelm, J.*) granting a summary judgment to their father, Virgil Poling, on their challenge to Poling's foreclosure of a mortgage on real property in Deer Isle. The trustees argue that Poling's mortgage foreclosure by publication, pursuant to 14 M.R.S.A. § 6203(1) (Supp.1999), violated their due process rights under the Maine and U.S. Constitutions. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1976, Virgil Poling transferred certain property in Deer Isle, Maine, to his daughters, Susan Norberg and Christina Northup, as trustees of the Poling Family Realty Trust. In exchange, Norberg and Northup gave Poling a promissory note secured by a mortgage on the Deer Isle property. The promissory note promised to pay "the principal sum of One Hundred Seventy Five Thousand Dollars ($175,-000.00) plus interest at the rate of six (6) percent per annum." An annual payment

of $6000 was payable to the order of Poling, starting on January 1, 1977, and continuing each year until the principal and the interest were paid in full.

[¶ 3] In an accompanying mortgage deed, the trustees (1) covenanted to perform "all the agreements and conditions as provided in note of even date," (2) allowed Poling to foreclose in the event of a breach of the note conditions, and (3) agreed that any notice of foreclosure should be given by publication "in some newspaper published in said county." No other form of notice was required by the mortgage deed.

[¶ 4] Initially, Northup and Norberg convinced Poling to forgive several annual payments, but Poling eventually required that the payments be made on time. When a dispute regarding the validity of the original transfer to the trust occurred, the trustees stopped making payments again.[1] In 1995, Poling initiated foreclosure proceedings pursuant to 14 M.R.S.A. § 6203(1). During three consecutive weeks, on July 1, 8, and 15, 1995, Poling published a notice of foreclosure on the Deer Isle property in the *Bangor Daily News*. On July 20, 1995, Poling filed a record of the publications at the Hancock County Registry of Deeds. The trustees assert that they did not find out about the foreclosure until after the one year statutory redemption period had run. *See* 14 M.R.S.A. § 6204 (1980 & Supp.1999).

[¶ 5] In 1998, the trustees filed a complaint against Poling in the Hancock County Superior Court challenging the validity of the foreclosure and seeking to set it aside.[2] When the trustees moved for a summary judgment on their claims related to the constitutionality of the foreclosure, Poling objected and moved for summary judgment in his own favor. The Superior Court denied the trustees' motion and granted Poling's motion for summary judgment, concluding that no "state action" was involved, and thus, that no constitutional violation had occurred. This appeal followed.[3]

## II. DISCUSSION

[¶ 6] We review the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party was entitled to judgment as a matter of law. *Kandlis v. Huotari*, 678 A.2d 41, 42 (Me.1996). When the facts are not disputed, we review the Superior Court's grant of summary judgment for errors of law. *Royal Ins. Co. v. Pinette*, 2000 ME 155, ¶ 4, 756 A.2d 520, 523. There is no dispute regarding the facts before us.

[¶ 7] The procedure used by Poling to foreclose on the Deer Isle property is set forth in 14 M.R.S.A. § 6203(1).[4] A foreclo-

1. In 1995, we upheld the validity of the Deer Isle property transfer and the Poling Family Realty Trust. *Poling v. Northup*, 652 A.2d 1114 (Me.1995).

2. Counts I and II of the complaint alleged that section 6203 deprived trustees of their property in violation of due process rights of the Maine and U.S. Constitutions. Count III argued that section 6203 and the due process clauses created an implied obligation of notice beyond mere publication. Counts IV and V were dismissed by stipulation of the parties.

3. Because the trustees' suit challenged the constitutionality of a statute, the Attorney General, on behalf of the State of Maine, moved to intervene as a defendant pursuant to M.R. Civ. P. 24(d). The Superior Court granted the State's motion, and the State remains an appellee on appeal.

4. 14 M.R.S.A. § 6203(1), "Foreclosure without possession," provides:

> If, after breach of the condition, the mortgagee or any person claiming under him is not desirous of taking and holding possession of the premises, he may proceed for the purpose of foreclosure in either of the following modes.
>
> **1. Public notice.** He may give public notice in a newspaper of general circulation in the county where the premises are situated, if any, or if not, in a newspaper of general circulation in an adjoining county, 3 weeks successively, of his claim by mortgage on such real estate, describing the premises intelligibly and naming the date of the mortgage and that the condition in it is broken, by reason whereof he claims a foreclosure; and cause a copy of such printed notice, and the name and date of the news-

sure pursuant to subsection 6203(1) involves three elements: (1) breach of a condition; (2) publication notice in a newspaper of general circulation for three consecutive weeks, describing the mortgage, the real estate sought to be foreclosed, the reason for the foreclosure, and a statement that the mortgagor breached a condition; and (3) a timely recording in the registry of deeds within thirty days after the last date of such publication. *Id.* Unless the property is redeemed by the mortgagor within one year of the first publication, the foreclosure is complete. 14 M.R.S.A. § 6204.

[¶ 8] The trustees argue that Poling's use of the statute deprived them of the trust's property without "reasonable notice" in violation of their due process rights under the Maine and U.S. Constitutions. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Specifically, the trustees contend that the statute, by allowing service by publication, and involving the Register of Deeds in the recording of the notice, embodies sufficient "state action" to implicate their due process rights.

[¶ 9] The Fourteenth Amendment protects against state actions that result in deprivation of property without due process of law. *Estate of Kruzynski,* 2000 ME 17, ¶¶ 8–10, 744 A.2d 1054, 1056–57.[5] The state action requirement excludes from the Fourteenth Amendment's reach "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citations omitted). Thus, our

threshold inquiry is whether a state action occurred in this matter. *See Onat v. Penobscot Bay Med. Ctr.,* 574 A.2d 872, 875 (Me.1990).

[¶ 10] The mere fact that the parties, in their private arrangements, agreed to make use of state-sanctioned remedies or procedures does not create state action. *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 486, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Nor does the fact that the State enacted the procedure and made the remedy available make the State a responsible party for the use of the process. *Am. Mfrs. Mut. Ins. Co.,* 526 U.S. at 53, 119 S.Ct. 977. In the context of private foreclosures, absent exceptional circumstances, "state action is not present when a private party forecloses a mortgage pursuant to a nonjudicial foreclosure statute." *Fitzgerald v. Cleland,* 498 F.Supp. 341, 346 (D.Me.1980) (citations omitted), *aff'd in part and vacated on other grounds,* 650 F.2d 360 (1st Cir.1981).

[¶ 11] The foreclosure complained of here was a nonjudicial foreclosure. Poling is an individual whose actions in this matter were not related to the government in any way. The contract of the parties was entered into privately, and the method of notice and foreclosure was agreed to in the private contract and did not involve the court or the State in any manner. With the exception of the recording of notice by the Register of Deeds, no state actor had any involvement whatsoever with the foreclosure.

---

paper in which it was last published, to be recorded in each registry in which the mortgage deed is or by law ought to be recorded, within 30 days after such last publication. All foreclosures of real estate mortgages between September 3, 1965 and February 8, 1966 and otherwise valid, except that public notice was given in a newspaper published and printed in whole or in part in the county where the premises are located rather than in a newspaper having its principal place of business in the county where the premises are located, are validat-

ed. For the purpose of this section a newspaper shall be defined as one printed in the English language and entered as second-class postal matter in the United States mails.

14 M.R.S.A. § 6203(1) (Supp.1999).

**5.** The due process rights guaranteed by the Maine Constitution, ME. CONST. art. I, § 6–A, are coextensive with those guaranteed by the Fourteenth Amendment of the U.S. Constitution. *In re Heather C.,* 2000 ME 99, ¶ 21, 751 A.2d 448, 454 (citations omitted).

[¶ 12] Accordingly, because the parties entered into a private agreement, with consensual reliance upon a statutorily articulated process, there can be no deprivation of constitutional rights unless the process directly involved the "overt, significant assistance of state officials" necessary for the establishment of state action. *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 54, 119 S.Ct. 977 (citing *Tulsa Prof'l Collection Servs., Inc.*, 485 U.S. at 486, 108 S.Ct. 1340). "[W]hen private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Tulsa Prof'l Collection Servs., Inc.*, 485 U.S. at 486, 108 S.Ct. 1340 (citations omitted).[6]

[¶ 13] We look then to the specific process at issue to determine whether it incorporated the "overt, significant assistance" of a state actor. *See id.* Northup contends that the action of the Register of Deeds in recording the notice constituted overt, significant assistance of a state actor. It did not. The Register did not order or cause the foreclosure; she merely recorded the notice. Neither the exercise of judgment nor decision making was present in the Register's actions. The Register was a passive recipient of the documents and performed only a ministerial function in recording the notice. Such ministerial actions do not constitute "significant" or "overt" actions of the State. *See Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 54, 119 S.Ct. 977;[7] *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 29 (6th Cir. 1975).

[¶ 14] Because the parties privately agreed to use the process, and the State had no more than a ministerial role in that process, no "state action" was involved. The Superior Court correctly concluded that the trustees failed to present material facts in support of a claim that they were deprived of rights guaranteed by the Maine or U.S. Constitutions.

The entry is:

Judgment affirmed.

6. No sheriff sale occurred in the instant action. *Cf. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (finding state action where there was an ex parte court order and subsequent sheriff's attachment).

7. The Supreme Court has distinguished those cases where the State's involvement, if any, was simply the enactment of a statute or the undertaking of a ministerial action, from those cases where the state officials actually played a significant role in the process. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (citing *N. Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)). *See also Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (finding state action where the judge ordered a prejudgment attachment); *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) (finding state action where the court ordered a writ of attachment); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (finding state action where state statute provided for the right to garnish or to obtain a prejudgment attachment as well as the procedure by which the rights could be exercised).