STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NUMBER AP-03-47
RAC - CUM - 1/29/2004

MAIETTA CONSTRUCTION, INC.,

Plaintiff

STATE OF MAINE
Cumberland ss, Clerk's Office
SUPERIOR COURT

JAN 29 2004

RECEIVED

v.

**ORDER**

CITY OF PORTLAND

and

SHAW BROTHERS CONSTRUCTION,
INC.,

DONALD L. GARBRECHT
LAW LIBRARY

APR 14 2004

Defendants

Before this court is Plaintiff, Maietta Construction, Inc.'s appeal of Defendant, City of Portland's bid decision, pursuant to M. R. Civ. P. 80B.

## FACTS

In April 2003, Defendant, City of Portland ("City") solicited bids for a project identified as Rehabilitation Runway 11-29 (Phase II); Runway Safety Area Upgrade; and CAT III-A Navaids and Lighting Upgrade (Phase I) ("Jetport Project"). Plaintiff, Maietta Construction, Inc. ("Maietta") and Defendant Shaw Brothers Construction, Inc. ("Shaw Brothers") submitted bids in accordance with Defendant City's requirements.

On May 20, 2003, Matthew Fitzgerald, the Purchasing Agent for Defendant City, opened the two bids, which were the only bids received for the project. The first bid was from Plaintiff Maietta and was in the amount of $6,496,895.00. The second bid was in the amount of $6,986,712.50, and was from Defendant Shaw Brothers. Subsequently, pursuant to policy, the Purchasing Agent sent the bids to the Jetport engineers, Deluca

Hoffman. The Jetport staff reviewed the bids and advised the Defendant City Purchasing Office that the bids were almost $1,000,000 over budget. In addition, the Purchasing Office was also advised that Shaw Brothers had made a mathematical error on the mulch item line in their bid.

Accordingly, on May 28, 2003, the project was reduced in scope with revisions for a re-bid process to be completed between Plaintiff Maietta and Defendant Shaw Brothers. Both parties submitted new bids on the project. Plaintiff Maietta's bid totaled $5,708,627.50 and Defendant Shaw Brother's bid totaled $5,527,915.50. Consequently, Defendant Shaw Brothers was awarded the contract on June 16, 2003. Thereafter, on July 6, 2003, work on the project began.

On July 16, 2003, Plaintiff Maietta filed an Rule 80B Complaint challenging the award of the bid by Defendant City and asserting a number of independent claims. On August 26, 2003, this court stayed the independent claims, pending resolution of this Rule 80B appeal.

## DISCUSSION

### A. Is The Award of The Bid Arbitrary and Capricious?

Plaintiff Maietta asserts that Defendant City's bid award was arbitrary and capricious. More specifically, Plaintiff Maietta argues that the motivating force behind the Defendant City's decision to require a re-bid was the determination that Defendant Shaw Brothers had made a "mathematical error." Conversely, Defendant City contends that its actions were justified because it chose to re-bid the contract because both bids were substantially over budget. (See Fitzgerald Aff. at ¶ 6.)

In order to overturn the Defendant City's bid award it is necessary for this court to find that its decision in awarding the contract to Defendant Shaw Brothers was arbitrary and capricious. Help-U-Sell, Inc. v. Maine Real Estate Comm'n, 611 A.2d 981,

984 (Me. 1992). The Law Court has "defined arbitrary and capricious conduct by an administrative agency as wilful and unreasoning action, without consideration of facts or circumstances. The burden of proof clearly rests with a party seeking to overturn an administrative decision." Id. (citations and quotations omitted). In addition, "[w]here there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Cent. Maine Power Co. v. Waterville Urban Renewal Auth., 281 A.2d 233, 242 (Me. 1971). "As a general rule, courts will interfere with a municipal body's award of a contract only if there is fraud, favoritism, or corruption." Dineen v. Town of Kittery, 639 A.2d 101, 102 (Me. 1994).

Section 2-302(e) of the Portland City Code provides that the City Manager may waive the competitive bidding process if:

> [t]here has been a competitive process but no bids or proposals were received or the city manger determines that the bids or proposal received are unreasonable or in excess of the f[u]nds available . . . In such cases, he or she may negotiate a contract if he or she determines:
>
> a. That it is not feasible to resolicit bi[d]s or proposals again; and
>
> b. Each qualified and responsible bidder or proposer, if any, has been notified of the intention to negotiate with the bidders or proposer first consecutively until a contract acceptable to the city is reached.

(Portland City Code § 2-302(e)(5).) In addition, section 2-305 of the Portland City Code specifically provides that the City Manager can waive "any informality or irregularity in any bid . . . and shall have the right to reject any or all bids or proposals received for whatever reason he or she deems in the best interest of the City." (Id. at § 2-305.) In fact, the invitation to bid provides: "[t]he City also reserves the right to waive any informalities in bids, to accept any bid and to reject any or all bids should it be deemed for the best interest of the City to do so." (Defendant City's Invitation To Bid at 2; R. at

6.)

Here, Defendant City decided to re-bid the project to the two original bidders. Plaintiff Maietta opines that Defendant City's decision was based on Defendant Shaw Brothers alleged "mathematical error." This court does not find this argument persuasive. Instead, this court finds that Defendant City's decision was based on the fact that both bids were substantially over budget. (See Fitzgerald Aff. at ¶¶ 6-11.) Moreover, Defendant City's decision was in accordance with the City Code and the language in the invitation to bid. Hence, this court finds that Plaintiff Maietta has failed to meet its burden, because there exists extensive evidence in the record to support Defendant City's decision.

## B. Is Plaintiff's Complaint Moot?

Next, Defendant City argues that Plaintiff Maietta's Complaint is moot. (See Rule 80B Brief Of City Of Portland at 8-9.) Plaintiff Maietta, however, asserts that because it has independent claims pending this appeal falls within the collateral consequences exception to the mootness doctrine.

The Law Court has held that:

> [a]n 80B appeal, like any other case, is moot "if the passage of time and the occurrence of events deprive the litigant of an ongoing stake in the controversy although the case raised a justiciable controversy at the time the complaint was filed. In reviewing for mootness we examine the record to determine if sufficient practical effects can flow from the litigation to justify the use of limited judicial resources. We have recognized three exceptions to the mootness doctrine for issues that (1) have sufficient collateral consequences; (2) are of great public concern; or (3) are capable of repetition but evade review.

Carroll F. Look Constr. Co., Inc. v. Town of Beals, 2002 ME 128, ¶ 6, 802 A.2d 994 (quotations and citations omitted). "Before we will entertain a moot appeal pursuant to the collateral consequences doctrine, the appellant must demonstrate that a decision on

the merits of the appeal will have more than conjectural and insubstantial consequences in the future." Sordyl v. Sordyl, 1997 ME 87, ¶ 6, 692 A.2d 1386 (quotations and citations omitted).

In the case at bar, Defendant City's attorney indicated at oral argument that the Jetport Project is almost ninety percent completed. In fact, Defendant City's attorney cited that the only remaining portion of the project to be completed is in regard to Department of Environmental Protection ("DEP") permits. Consequently, this situation has limited continuing controversial vitality. Accordingly, this court finds that sufficient practical effects do not flow from this "litigation to justify the use of limited judicial resources." Carroll F. Look Construc. Co., 2002 ME 128 at ¶ 6, 802 A.2d at 996.

WHEREFORE, this court **DENIES** and **DISMISSES** Plaintiff Maietta's appeal, pursuant to M. R. Civ. P. 80B.

Dated: January 24, 2004

Roland A. Cole
Justice, Superior Court

Date Filed __07-16-03__ __Cumberland__ Docket No. __AP-03-47__
County

Action __80B Appeal__

MAIETTA CONSTRUCTION, INC.

CITY OF PORTLAND
SHAW BROTHERS CONSTRUCTION, INC.

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Timothy H. Norton, Esq./Jennifer Archer, Esq. | Michael D. Traister, Esq. (Shaw Brother |
| Kelly, Remmel & Zimmerman | P.O. Box 9785 |
| 53 Exchange Street | Portland, Maine 04104-5085 |
| P.O. Box 597 | (207) 773-5651 |
| Portland, Maine 04112-0597 | |
| (207) 775-1020 | Donna M. Katsiaficas, Esq. |
| | City of Portland |
| | 389 Congress Street |
| | Portland, Maine 04101-3509 |
| | (207) 874-8480 |

Date of
Entry

2003

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-47
RAC- CUM- 6/4/2004

MAIETTA CONSTRUCTION, INC.,

     Plaintiff

v.

CITY OF PORTLAND

and

SHAW BROTHERS CONSTRUCTION, INC.,

     Defendants

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUN 0 2004

RECEIVED

DONALD L. GARBRECHT
LAW LIBRARY

JUN 9 2004

Before this court is Defendants, City of Portland ("City") and Shaw Brothers Construction, Inc.'s ("Shaw Brothers") Motion to Dismiss Plaintiff, Maietta Construction, Inc.'s ("Maietta") remaining independent claims, pursuant to M.R. Civ. P. 12(b).

## FACTS

On July 16, 2003, Plaintiff Maietta filed a Complaint challenging the Defendant City's award of a bid to Defendant Shaw Brothers. Plaintiff Maietta's Complaint contained several counts. More specifically, Plaintiff Maietta's Complaint contained a Rule 80B appeal, as well as several independent claims. These included counts for breach of contract, negligent misrepresentation, denial of due process, equal protection violations, and violations of the Maine Deceptive Trade Practices Act.

On August 26, 2003, this court issued an order staying Plaintiff Maietta's independent claims until after a hearing on the Rule 80B appeal. Subsequently, this

court denied Plaintiff Maietta's Rule 80B appeal. Accordingly, on March 3, 2004, Defendant City filed a Motion to Dismiss, contending that Plaintiff Maietta's remaining independent claims were barred by the doctrine of collateral estoppel.

## DISCUSSION

### A. Standard of Review

When reviewing the Defendant City's motion to dismiss, this court will look at the complaint in the light most favorable to the Plaintiff, taking the material allegations as admitted. See In re Wage Payment Litigation, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. A motion to dismiss is properly granted "when it appears beyond a doubt that the plaintiffs are entitled to no relief under any set of facts that might be proven in support of the claim." Dutil v. Burns, 674 A.2d 910, 911 (Me. 1996).

### B. Collateral Estoppel

Defendant City argues that the independent claims remaining in Plaintiff Maietta's Complaint are barred by the doctrine of collateral estoppel, and should be dismissed by this court.

"The collateral estoppel prong of res judicata is focused on factual issues, not claims, and asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding." Macomber v. Macquinn-Tweedie, 2003 ME 121, ¶ 22, 834 A.2d 131, 139. In addition, "[c]ollateral estoppel arises only if the identical issue necessarily was determined by a prior final judgment. A party asserting collateral estoppel has the burden of demonstrating that the specific issue was actually decided in the earlier proceeding." Id. at ¶ 25 (citations and quotations omitted).

2

First, in order to ascertain if the doctrine of collateral estoppel bars Plaintiff Maietta's independent claims it is necessary for this court to determine whether or not there exists a valid, final judgment issued in a previous action.

In the case at bar, on December 10, 2003, this court denied Plaintiff Maietta's Rule 80B appeal, but did not direct the entry of a final judgment in that portion of the proceedings. See M.R. Civ. P. 54(b)(1). Additionally, this court notes that there does not exist a previous action in this case, because the Rule 80B appeal is part of the same proceeding as the independent claims. Hence, this court finds that the doctrine of collateral estoppel is inapplicable.

Furthermore, Defendant City also contends that this court has effectively ordered that Plaintiff Maietta is not entitled to further discovery regarding its independent claims. This conclusion is based on language contained in this court's order, providing that "the discovery issue, if needed, can be explored if the Plaintiff prevails on its Rule 80B Motion." (December 10, 2003 Order at 2.) This court finds that the intent of this language was not to have the preclusive effect desired by Defendant City.

WHEREFORE, this court **DENIES** Defendants City and Shaw Brothers' Motion to Dismiss, pursuant to M.R. Civ. P. 12(b).

Dated: June 4, 2004

Roland A. Cole
Justice, Superior Court

3

COURTS .
d County
287
04112-0287

DONNA KATSIAFICAS ESQ
389 CONGRESS STREET
PORTLAND ME 04101

MICHAEL TRAISTER ESQ
PO BOX 9785
PORTLAND ME 04112

JENNIFER ARCHER ESQ
PO BOX 597
PORTLAND ME 04112

STATE OF MAINE                          STATE OF MAINE        SUPERIOR COURT
CUMBERLAND, ss.                         CUMBERLAND, SS        CIVIL ACTION
                                        CLERK'S OFFICE        DOCKET NO. AP-03-47

                                        2005 FEB -2  P 3: 43

Maietta Construction, Inc.,
        Petitioner

v.                                                           ORDER

City of Portland,
        Respondent                      FEB 7 2005


        This case comes before the Court on Defendant City of Portland's Motion

for Summary Judgment pursuant to Maine Rule 56 of Civil Procedure.

                                   **FACTS**

        This dispute arose when two construction companies, Plaintiff Maietta

Construction, Inc. (Plaintiff) and Shaw Brothers Construction, Inc. (Shaw Bros.),

submitted bids for a contract with Defendant City of Portland (the City) for

construction at the Portland Jetport. Portland Purchasing Agent, Matthew

Fitzgerald opened both bids on May 20, 2003 and found a bid from Plaintiff for

$6,496,865, and a bid from Shaw Bros. for $6,986,712.50. Although the City knew

additional funds might become available for the project, both bids were

considerably higher than the $5.5 million dollars the City had budgeted. The bids

were also reviewed by Jetport engineer Michael DeLuca and operations manager

Arthur Sewall. In reviewing the Shaw Bros. bid, DeLuca, Sewall and Fitzgerald

noted what they assumed was a decimal or computational error of some

magnitude on Shaw Bros.'s line item price for mulch. Fitzgerald, DeLuca and

Sewall concluded that, without the error, Shaw Bros. bid might be lower.

                                       1

Because of the possible error, and because both bids were well over budget, the City decided to reduce the scope of the project, and invite both Plaintiff and Shaw Bros. to resubmit bids on the reduced project. On May 28, 2003, those bids were opened, with Plaintiff bidding $5,708,627.50, and Shaw Bros. bidding $5,527,915.50. Shaw Bros. was awarded the contract. Work began on July 6, 2003, and has since been completed.

On July 16, 2003, Plaintiff filed a Rule 80B appeal of the City's decision to award the contract to Shaw Bros. (Count I), along with independent claims for injunctive and declaratory relief, and tort, constitutional, and trade practices violations (Counts II-VIII). Plaintiff's independent claims were stayed pending the outcome of the 80B appeal.

On January 29, 2004, this Court denied and dismissed Plaintiff's 80B appeal; the City then moved to dismiss Plaintiff's independent claims. The City's Motion to Dismiss was denied, and both sides conducted additional discovery. On November 19, 2004, the City filed for summary judgment pursuant to Maine Rule 56 of Civil Procedure on Plaintiff's independent claims for breach of contract (Count II); negligent misrepresentation (Count III); due process (Count IV); equal protection (Count V); deceptive trade practices (Count VI); declaratory judgment (Count VII); and injunction (Count VIII).

## DISCUSSION

The existence of a dispute of material fact and entry of summary judgment are questions of law. *Scott v. Androscoggin County Jail*, 2004 ME 143, ¶ 14, __A.2d __ (citing *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 18, 834 A.2d 947, 952-53). On summary judgment, the Court will consider the evidence in the light most favorable to the party against whom judgment is sought to decide whether the

2

parties' statements of material facts and the referenced record evidence reveal a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Id.* To survive a defendant's motion for a summary judgment, a plaintiff must establish a prima facie case for each element of the cause of action. *Id.* (citing *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48, 52). If the plaintiff presents insufficient evidence on an essential element of the cause of action, so that "'the defendant would . . . be entitled to judgment as a matter of law on that state of the evidence at a trial, the defendant is entitled to a summary judgment.'" *Id.* (quotation omitted).

**Count II. Breach of Contract.**

Generally, "an advertisement soliciting bids is not an offer but only a request for offers that may be accepted or rejected." *Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 9, 802 A.2d 994, 997. In the absence of a statutory requirement to accept a certain bid, bidders' offers may be rejected . *Id.* at n.1 (citing RESTATEMENT (SECOND) OF CONTRACTS § 28) (finding no breach of contract with lowest bidder when the Town expressly reserved the right to accept or reject all bids). The Law Court has found municipalities have considerable discretion when it comes to deciding what constitutes their "best interest" in awarding a contract, and courts will interfere "only if there is fraud, favoritism, or corruption." *Dineen v. Town of Kittery*, 639 A.2d 101, 102 (Me. 1994).

The City argues that Plaintiff's lower bid on the first contract solicitation is an offer, and does not create a binding agreement when the City expressly reserved the right to reject all bids. The City also argues there can be no acceptance by conduct of Plaintiff's bid/offer by the City when Plaintiff did not

3

invite such an acceptance and City regulations expressly spell out the steps required to generate a binding contract.

Plaintiff argues there is a disputed issue of fact concerning whether the City accepted the Plaintiff's offer by its conduct, first, because the City generated an unsigned bid award document listing both Plaintiff and Shaw Bros. 's original bids, and second, because the City sent some equipment for a Scan 16 System, and other supplies to Plaintiff in error. The Plaintiff also argues there is a disputed issue of fact concerning whether the City's reasons for rejecting Plaintiff's bid and inviting the parties to rebid on the scaled down project were pretextual.

Here, it is undisputed that the City's Invitation to Bid on the Jetport project reserved the right for the City to accept or reject any bid, whether the lowest bid or not.[1] The City Code of Ordinances also provides that the city manager "shall have the right to reject any or all bids or proposals received for whatever reason he or she deems in the best interest of the city." § 2-305. It is also undisputed that Plaintiff, in submitting his bid, did not invite the City to accept the offer by conduct.[2] Such an "acceptance" would be utterly contradicted by the City's conduct in rejecting both bids, reducing the project, and inviting a second round of bids, and Plaintiff's conduct in willingly

---

[1] The "Invitation to Bid" states:
> The City of Portland reserves the right to accept the bid on one or more items of a proposal, on all the items of a proposal, or on any combination of items on a proposal. The City also reserves the right to waive any informalities in bids, to accept any or all bids should it be deemed in the best interest of the City to do so.

[2] An offer may be accepted by a party's performance, but only if the party making the offer invites such an acceptance by performance. RESTATEMENT (SECOND) OF CONTRACTS § 53 (1981)(using as an example, the offering of a reward in exchange for the return of a lost item).

4

participating in that second bid. Also, City regulations require specific steps be taken before the City accepts the offer of one of the bidders. Under Section 2-302(b)(1), (2) of Portland Code of Ordinances, no award of any bid can take place until the "finance director certifies that funds are available for such procurement," and a contract is executed, and signed. Although the Ordinances state a general intent "to award the bid to the lowest qualified and responsible bidder who meets the specifications," § 2-302(c), the that acceptance is far from automatic, and the City is careful to reserve its right to reject any bid when it is in the City's interest to do so. The Ordinances allow the City, when bids are collected but over budget, *and* rebidding isn't feasible, to negotiate with one or another bidder; however, there is no requirement that the City do so.[3]

Here, the parties hotly dispute the City's motive in deciding it was in its best interest to reject both initial bids, scale down the project, and invite Plaintiff and Shaw Bros. to bid again. However, that dispute is not material to the issue of whether the City accepted, and thus, entered a binding contract with the Plaintiff at any point in the two bidding processes. Under contract law and the express provisions of the City Code of Ordinances governing the formation of such contracts, the City did not.

Because the existence of a binding contract is a necessary element to Plaintiff's breach of contract claim, summary judgment should be awarded to the City on Count II.

---

[3] Negotiations may be undertaken with the qualified and responsible proposer(s) whose proposal(s) is determined to be most advantageous to the city, considering the price and evaluation factors set forth in the request for proposals. § 2-302 (d)(4).
(5) [If there was competitive bidding and the bids are unacceptable, the city manager] may negotiate a contract if he or she determines: a. That it is not feasible to resolicit bits (sic) or proposals again . . . § 2-302(e)(5)(a).

5

**Count IV Due Process**

Plaintiff seeks damages under 42 U.S.C. §§ 1983, 1988, and the Maine Civil Rights Act 5 M.R.S.A. § 4682 (2004), claiming the City deprived Plaintiff of a protected property interest without due process of law. A "necessary predicate for either [procedural or substantive due process claims] is a cognizable property interest." *Look Constr. Co. v. Town of Beals,* 2002 ME 128, ¶ 11, 802 A.2d 994, 997 Citations omitted). The Law Court has expressly adopted the rule that "disappointed bidders do not have a property interest unless the applicable law or regulation *mandated that the contracting body accept the bid* and gave it *no discretion whatsoever* to reject the bid. *Id.* at ¶ 16, 802 A.2d at 999 (emphasis added)(citing *Kim Construction Co. v. Bd. of Trustees of the Village of Mundelein,* 14 F.3d 1243, 1247 (7th Cir. 1994)).

The City argues the Plaintiff's claim fails as a matter of law because Plaintiff, as a disappointed bidder, had no property interest in the Jetport contract once the City retained the discretion to withhold the award of that contract under the express holding in *Look Constr. Co.* Plaintiff argues there is a disputed issue of fact concerning whether the City expressly retained the discretion to reject Plaintiff's lower initial bid, scale back the project and solicit new bids from Plaintiff and Shaw Bros.

Here, the City's discretion to reject Plaintiff's bid could not be clearer. That discretion was announced on the face of the Invitation to Bid,[4] and embodied in the Ordinances at § 2-305,[5] and under the many exceptions for waiving the

---

[4] See *supra* note 2.

[5] The manager may waive any informality or irregularity in any bid or proposal received and shall have the right to reject any or all bids or

6

competitive bidding process altogether at § 2-302(e)(1-8). Although the parties actively dispute the correctness of the City's motives when it acted within its discretion and did not negotiate with Plaintiff, but instead scaled back the project and solicited rebidding, there is no issue of fact about whether the City had that discretion under the express terms of its Code of Ordinances. Because the Ordinances do not mandate that the City accept or negotiate with the initial lowest bidder when both bids are over budget, and the City has considerable discretion to reject any bid, Plaintiff has no protected property interest in the award of the contract that would subject to due process protections. *Look Constr. Co. v. Town of Beals,* 2002 ME 128, ¶ 16, 802 A.2d 994, 999. Plaintiff's failure to demonstrate it had a property interest in the contract it sought through the bidding process is fatal to both its federal and state due process claims *Id.* at ¶ 17; *Northrup V. Poling,* 2000 ME 199, ¶ 9 n.5, 761 A.2d 872, 875 (due process rights under the Maine Constitution are coextensive with those guaranteed by the Fourteenth Amendment of the U.S. Constitution). Summary judgment should be awarded to the City on Count IV.

**Count V. Equal Protection**

Equal protection under the U.S. and Maine Constitutions may be implicated "when an action by the state results in treatment of a person different than the treatment given similarly situated individuals." *Aucella v. Town of Winslow,* 583 A.2d 215, 216 (Me. 1990)(citation omitted). However, the unequal application of a law "is not a denial of equal protection unless there is shown to be an element of intentional or purposeful discrimination." *Id.* An unlawful

---

proposals received for whatever reason he or she deems in the best interest of the city.
§ 2-305.

7

intent "to favor one individual or class over another. . . may be inferred from the totality of relevant facts." *Id.* at 216-17 (citations omitted).

The State may treat similarly situated persons unequally, however, "if there is a rational basis for the distinction that is related to a legitimate state purpose." *Aucella v. Town of Winslow,* 628 A.2d 120, 124 (Me. 1993)(affirming that the town's desire to acquire the valuable, commercially zoned property was a sufficiently rational basis for its selective enforcement of tax lien foreclosures).

Plaintiff argues that there is a disputed issue of fact over whether the City favored Shaw Bros. for the Jetport project when it found additional funding and awarded the contract to the lower bidder in the second round of bidding, but not the first. Plaintiff argues the fact that one of Shaw Bros. employees, Eric Barnes, was previously employed by DeLuca/Hoffman, project engineers, may be a basis for the City's favoritism toward Shaw Bros. Such favoritism, Plaintiff argues, can also be inferred from the City's conduct in interpreting the Shaw Bros. mulch figure as an error, and soliciting new bids on a reduced project, rather than negotiating with the Plaintiff. The City argues that the desire of the City to get a lower price for the Jetport project provides a sufficient rational basis for its actions.

Here, the factual dispute over whether Shaw Bros. made an error in its initial bid or intentionally computed a high cost for mulch as part of its bidding strategy, is not material to any of Plaintiff's claims. Nor is the issue of whether the City correctly identified Shaw Bros.'s error. The undisputed facts show the City budgeted 5.5 million dollars for the project, and that additional funds were not available, but were likely to be available later. The record also shows Plaintiff's lower initial bid was close to one million dollars over the originally

8

budgeted amount. The record shows that Fitzgerald, Sewall and DeLuca believed that Shaw Bros.'s bid would be significantly lower, saving the City and taxpayers money, if Shaw Bros.'s alleged error was corrected. It is also undisputed that the City did not negotiate with Shaw Bros., or permit Shaw Bros. to correct a possible error on its initial bid, although the City had the discretion to do either.[6] Instead, the two bidders were put on equal footing and allowed to rebid a scaled back project. The undisputed record shows the City made a decision, authorized under its ordinances, to scale back the project, thus lowering the cost, in the face of two bids well over budget, one of which may or may not have contained an error. Although the City found additional funding and awarded the contract to Shaw Bros. after Shaw Bros. was over budget on the second bid, the record shows the amount of overage in the rebid-$27,000 as opposed to almost $1,000,000-was far from similar to the first bid. Even if the City conceivably could have searched for and found additional funds to pay Plaintiff the original $6,496,865 amount, it was rational of the City to decide to contract for only the work it needed, for the least, or much less money.

Finally, nothing in the record on summary judgment suggests favoritism can be inferred from the previous employment of Mr. Barnes by Mr. DeLuca. No evidence is presented of any animosity toward the Plaintiff; in fact, it is undisputed that the City had awarded contracts to the Plaintiff on more than one occasion. Because the Plaintiff has not met his burden of providing evidence of a discriminatory intent by the City or an irrational basis for the City's actions, summary judgment for the City should be granted on Count V.

---

[6] "The city manager may waive any informality or irregularity in any bid or proposal received . . . " §2-305

## Count VI. Deceptive Trade Practices

The goal of the Uniform Deceptive Trade Practices Act is "to provide aggrieved parties an opportunity to seek injunctive relief from deceptive practices." *J.S. McCarthy, Co. v. Brausse,* 340 F.Supp.2d 54, 61 (D. Me. 2004). Under Maine law, a person engages in deceptive trade practice when he or she does any of the following:

A. Passes off goods or services as those of another;

B. Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

C. Causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

D. Uses deceptive representations or designations of geographic origin in connection with goods or services;

E. Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

F. Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

G. Represents that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

H. Disparages the goods, services or business of another by false or misleading representation of fact;

I. Advertises goods or services with intent not to sell them as advertised;

J. Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

K. Makes false or misleading statements of fact concerning the reasons for, existence of or amounts of, price reductions; or

L. Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

10

10 M.R.S.A. § 1212 (2004). When confusion under Subsection (L) is alleged, it is not necessary that a misleading representation be false to be actionable under this statute. *Ambrose v. N.E. Ass'n of Schools and Colleges,* 252 F.3d 488, 492 n.1 (1st Cir. 2001). However, "not just any confusion or misunderstanding will do" to fall within the statute's reach. *Town and Country Motors v. Bill Dodge Auto. Group, Inc.,* 115 F. Supp.2d 31, 33 (D. Me. 2000). Under the principle of ejusdem generis, "where general words follow specific words in a statutory enumeration, general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *New Orleans Tanker v. Dept. of Transp.,* 1999 ME 67, ¶ 7, 728 A.2d 673, 675 (quotation omitted). Thus, the U.S. District Court noted that the word "similarly" in Subsection (L) refers only to the creation of "confusion about source or origin" of goods or services. *Town and Country Motors,* 115 F. Supp.2d at 33 (finding Subsection (L) did not apply because confusion about whether rust proofing was desirable did not create confusion about the "source or origin" of the rust proofing services at issue).

Here, Plaintiff argues the City's conduct creates confusion and misunderstanding within the meaning of Subsection (L). Plaintiff maintains the City creates confusion and misunderstanding when it declares the intent to award contracts to the lowest bidder,[7] and when it fails to negotiate with the low bidder and instead solicits rebids. The City also creates confusion and misunderstanding when it fails to follow its own procedures by inviting parties

---

[7] Competitive bidding . . . shall include, at a minimum prior public notice of the procurement . . .; solicitation of sealed bids based on identical specifications; and intent to award the bid to the lowest qualified and responsible bidder who meets the specifications. § 2-302 (c).

11

to rebid without advertising generally or providing written notice.[8] The City argues the City's practices do not meet the statutory definition of "confusing and misleading" trade practices under the Deceptive Trade Practices Act, that the City's statement of intent to award the contract to the low bidder was expressly conditioned by other provisions in the Ordinances, and that the City was clear in all communications with bidders about retaining its discretion to accept or reject any bid.

Here, the Court is hard pressed to find that the Deceptive Trade Practices statute applies to the practices complained of by the Plaintiff. Subsection (L) refers to conduct that creates confusion or misunderstanding "similarly" to the confusion and misunderstanding created when a person passes off goods or services (A), suggests goods and services come from a certain source (B), or have certain qualities (C)-(E) they do not, represents goods and services as new when they are not, (F), or of a certain standard they are not, (G), disparages goods and services of another (H), advertises goods or services without having them in stock or selling them as advertised (I)(J), or misrepresents price reductions (K).

Furthermore, it is undisputed that the City's Code of Ordinances expressly reserves to the City the option to reject any bid, expressly conditions the award of a contract on the certification of available funds, and expressly states the City "may" but not "must" negotiate with the low bidder, and only if it is not possible to resolicit bids, which, in this case it was. Although the City failed to provide notice in writing to Plaintiff and Shaw Bros. that the project was being scaled back and rebid, the undisputed record shows that the City provided Plaintiff and Shaw Bros. with plenty of notice of that plan, including identical

---

[8] § 2-302 (c).

12

written specifications on the scaled back project and time to reconfigure their bids. That the City failed to publicly advertise the rebid was confusing or misleading only to third parties who may have also wished to take part. Even there, the finance director retained discretion, under City ordinances, to restrict the scope of bid solicitations.[9]

Nothing in the record on summary judgment, although viewed in a light most favorable to the Plaintiff, suggests the City engaged in practices that create a likelihood of "confusion or misunderstanding" within the meaning of deceptive trade practices statute, 10 M.R.S.A. § 1212(L), and Plaintiff's claim under the statute fails as a matter of law.

**Count VI. Declaratory Judgment**

The Superior Court has discretionary authority pursuant to 14 M.R.S.A. § 5951 and M.R. Civ. P. 57 to entertain requests for and to enter declaratory judgments in appropriate circumstances." *Maine Cent. R.R. Co. v. Town of Dexter*, 588 A.2d 289, 293 (Me. 1991). "[W]hether a declaratory judgment should be issued rests in the sound discretion of the trial court." *Dodge v. Town of Norridgewock*, 577 A.2d 346, 347 (Me. 1990). However, "courts should decline to decide issues which by virtue of . . . circumstances have lost their controversial vitality." *State v. Jordon*, 1998 ME 174, ¶ 10, 716 A.2d 1004, 1006. A case or controversy will be found moot when a court finds that not enough practical effects would flow from resolving the litigation to justify expending limited judicial resources. *Id.* Nonetheless, even a case that is moot may be reached on its merits if:

---

[9] § 2-302 (c), (d)(2).

13

(1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief;

(2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public, the Court may address; or

(3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Monroe v. Town of Gray*, 1999 ME 190, ¶ 5, 743 A.2d 1257, 1258 (citing *Halfway House v. City of Portland*, 670 A.2d 1377, 1380 (Me. 1996)).

Plaintiff seeks a declaratory judgment finding that the City's contract with Shaw Bros. to be null and void and finding that the contract is properly awarded to Plaintiff. The City argues this claim is moot now that the contract has been awarded to Shaw Bros. and work on the Jetport project at issue is complete, and that no exceptions apply. Plaintiff argues the claim is not moot under the exception to mootness for issues of "great public concern." *Id.*

Here, the record provides no evidence that the City's competitive bidding practices and regulations are an issue of great public importance or that this Court should provide guidance to the bar or the public in an area of "continued uncertainty in the law." *Globe Air, Inc. v, Thurston*, 438 A.2d 884, 887 (Me. 1981)(citation omitted). Nothing added to the record by additional discovery supports the need for a separate decision, other than the decision reached in Plaintiff's 80B appeal, on whether the contract was lawfully awarded. Such a decision, "in the absence of practical consequences . . . would be a meaningless abstract decision that the mootness doctrine is intended to prevent." *Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 7, 802 A.2d 994, 996 (finding an 80B appeal

14

moot and no public interest exception applied after a disputed construction contracted awarded and the contract performed). *See, also, Globe Air, Inc. v, Thurston,* 438 A.2d 884, 887 (Me. 1981)(finding nothing could be done to restore the status quo to an unsuccessful bidder once the disputed contract was fully executed, and the matter was moot).

**Count III. Negligent Misrepresentation and Count VIII. Injunction**

Plaintiff concedes that Plaintiff's Count III for negligent misrepresentation is barred under the Maine Tort Claims Act, 14 M.R.S.A. § 8101 et seq. Plaintiff also concedes Plaintiff's request to enjoin execution of the contract is now moot.

This Court **GRANTS** summary judgment to Defendant City of Portland on all remaining Counts, II-VIII, of Plaintiff Maietta Construction, Inc.'s Complaint.

Dated February 2, 2005

Roland A. Cole
Justice, Superior Court

15

Date Filed 07-16-03    Cumberland    Docket No. AP-03-47
                       County

Action   80B Appeal

MAIETTA CONSTRUCTION, INC.            CITY OF PORTLAND
                                     ~~SHAW BROTHERS CONSTRUCTION, INC.~~ Dismissed

                                vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Timothy H. Norton, Esq./Jennifer Archer,Esq. Kelly, Remmel & Zimmerman 53 Exchange Street P.O. Box 597 Portland, Maine 04112-0597 (207) 775-1020 | Michael D. Traister, Esq. (Shaw Brothers) P.O. Box 9785 Portland, Maine 04104-5085 (207) 773-5651 |

James A. Billings, Esq. (co-counsel)
Donna M. Katsiaficas, Esq.
City of Portland
389 Congress Street
Portland, Maine 04101-3509
(207) 874-8480

| Date of Entry | |
|---|---|
| 2003 | Edward R. Benjamin, Jr., Esq. |

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-047

2005 JUN -6 P 3: 44



Maietta Construction, Inc.,
Appellant

v.                                    JUL 18 2005                    ORDER

City of Portland,
Respondent

This case comes before the Court on Respondent City of Portland's

Motion for Award of Attorney's Fees pursuant to 42 U.S.C. § 1988.

**FACTS**

Appellant Maietta Construction, Inc. (Appellant) and Respondent City of

Portland (the City) were engaged in litigation concerning the award of a

construction contract for work at the Portland Jetport. Appellant brought an

appeal pursuant to M.R. Civ. P. 80B, challenging that award, and also asserted a

number of independent claims. The independent claims included two 42 U.S.C.

§ 1983 claims for violation of Appellant's due process (Count IV) and equal

protection (Count V) rights. Both claims alleged Appellant had a protected

property right to the Jetport contract.

In January 2004, Appellant's 80B appeal was denied. The City moved to

dismiss Appellant's independent claims, arguing that those claims were now

barred by the doctrine of collateral estoppel. That motion was denied when this

Court found the doctrine inapplicable, because the Court's decision on

Appellant's 80B claim was not a final judgment for collateral estoppel purposes.

M.R. Civ. P. 54(b)(1). On February 2, 2005, this Court granted summary judgment to the City on all of Appellant's independent claims. The City now seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988 as the prevailing party in Appellant's § 1983 claims.

## DISCUSSION

The Civil Rights Attorney's Fees awards Act authorizes state courts, under certain circumstances, to award attorney's fees to the prevailing party in a § 1983 action. Such an award is entirely discretionary. 42 U.S.C. § 1988 (" . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs.") *Id.* Where, as here, the prevailing party is the Defendant, attorney's fees may be awarded only upon a finding that the Plaintiff's § 1983 claim was "frivolous, unreasonable or groundless, or that Plaintiff continued to litigate after it clearly became so." *Christianburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978). This standard is consistent with § 1983's "generally pro-plaintiff and pro-civil rights orientation and protects a defendant only from groundless litigation." SHELDON NAHMOD, THE LAW OF SECTION 1983 § 10:3 at 10-15 (4TH ED. 2004). A plaintiff "who fully litigates an argument that is not "wholly without merit" does not incur responsibility for the opposing party's fees." *Aucella v. Town of Winslow*, 628 A.2d 120, 125 (Me. 1993). The Law Court has cautioned that "great care should be exercised by the court in awarding a defendant attorney fees for defending an action brought under section 1983." *Burr v. Town of Rangeley*, 549 A.2d 733, 735 (Me. 1988). However, plaintiffs are also warned that "civil rights claims should not be included in an action seeking judicial review of an administrative decision

2

as a matter of reflexive routine or for the purpose of gaining leverage against the municipality." *Id.*

Thus, when a plaintiff's claim that Town officials were motivated by racial discrimination in a tax lien foreclosure survived summary judgment and was decided by a jury, the Law Court affirmed that his § 1983 equal protection claim was "not without merit" nor filed reflexively to gain leverage, and refused to award the Town attorney's fees. *Aucella,* 628 A.2d at 125. Where there was "some merit" to a kennel owner's substantive due process claim, the trial court acted "well within its discretion" in denying fees to the prevailing town. *Bushey v. Town of China,* 645 A.2d 615, 619 (Me. 1994). However, attorney's fees were awarded to the defendant municipality when a developer's substantive due process claim was filed reflexively, was a "naked and unsubstantiated allegation" and was "totally lacking in merit." *Burr v. Town of Rangeley,* 549 A.2d at 735.

Here, both Appellant's § 1983 claims allege that Appellant was deprived of its property interest in the Jetport contract. The City argues that such claims were totally lacking in merit following the Law Court's 2002 holding in *Look Construction v. Town of Beals,* 2002 ME 128, 802 A.2d 994. In *Look Construction,* the Law Court expressly held that "disappointed bidders do not have a property interest [in the contract] unless the applicable law or regulation mandated that the contracting body accept the bid and gave it no discretion whatsoever to reject the bid." *Id.* ¶ 16, 802 A.2d at 999.

Appellant, however, did not ignore the holding in *Look Construction.* Instead, after surviving the City's motion to dismiss, Appellant sought to survive summary judgment on the § 1983 claims by alleging that there was dispute over

3

whether the City was mandated to accept Appellant's initial low bid or had the discretion to reject it. Appellant cited provisions in the City's ordinances, including general language, that suggested the City was required to award contracts to the lowest bidder. Appellant also argued there was some evidence Appellant had in fact been awarded the contract, but was later deprived of it. Although Appellant did not prevail on these admittedly thin arguments, the allegations of a property interest in the contract were not "naked and unsubstantiated allegations," or "totally lacking in merit." *Burr v. Town of Rangeley*, 549 A.2d at 735.

Respondent City of Portland's Motion is hereby DENIED.

Date _____ June 6, 2005 _____

_____
Justice, Superior Court

4

Date Filed __07-16-03__   __Cumberland__   Docket No. __AP-03-47__
                              County

Action __80B Appeal__ _____

⬤

MAIETTA CONSTRUCTION, INC.        CITY OF PORTLAND
                                  ~~SHAW BROTHERS CONSTRUCTION, INC~~. Dismissed

                              vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Timothy H. Norton, Esq./Jennifer Archer,Esq. | Michael D. Traister, Esq. (Shaw Brothers) |
| Kelly, Remmel & Zimmerman | P.O. Box 9785 |
| 53 Exchange Street | Portland, Maine 04104-5085 |
| P.O. Box 597 | (207) 773-5651 |
| Portland, Maine 04112-0597 | ~~James A. Billings, Esq. (co-counsel)~~ |
| (207) 775-1020 | Donna M. Katsiaficas, Esq. |
| | City of Portland |
| | 389 Congress Street |
| | Portland, Maine 04101-3509 |
| | (207) 874-8480 |

| Date of Entry | | James Billings Esq. and |
|---|---|---|
| 2003 | | Edward R. Benjamin, Jr., Esq. |
| | | Thompson & Bowie, LLP |
| July 18 | Received 07-16-03. | P.O. Box 4630 |